Filed 9/3/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>    Respondent;<br><br>T.D.,<br><br>    Real Party in Interest. | F078697<br><br>(Super. Ct. No. 512128)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the majority opinion filed herein on August 5, 2019, be modified in the following particulars:

1.  On page 11 of the majority opinion, following the first sentence of the second full paragraph, after the word "ambiguous," add as footnote 3 the following footnote, which will require renumbering of all subsequent footnotes:

    [3]In a petition for rehearing, the District Attorney claims no party proposed or briefed the issue of ambiguity. (See Gov. Code, § 68081.) To the contrary, in her petition for writ of mandate, the District Attorney argues section 5 of Proposition 57 must be read to permit amendments only " 'so long as such amendments are 1) consistent with; and 2) further the intent' of Proposition 57"

(boldface, underlining & italics omitted) — in other words, that the language is unambiguous.  The Attorney General acknowledges the phrase as it is written in section 5 of the Act can be read disjunctively to impose two distinct requirements or conjunctively to impose a single requirement.  We agree the language can be read both ways, which leaves the meaning uncertain, i.e., ambiguous.

2.  On page 13 of the majority opinion, the sentence that follows the parenthetical citation to *Alexander C.* that begins with "Significantly" and ends with "effected" is deleted and the following sentence is inserted in its place:

> Significantly, Proposition 57 neither granted prosecutors the right to try 14- and 15-year-olds in criminal court nor set the lowest age at which trial of a juvenile as an adult could be effected.

There is no change in judgment.

Petitioner's petition for rehearing is denied.

DETJEN, J.

I CONCUR:

PEÑA, J.

I CONCUR IN THE DENIAL OF THE PETITION FOR REHEARING:

POOCHIGIAN, Acting P.J.

2.

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>     Respondent;<br><br>T.D.,<br><br>     Real Party in Interest. | F078697<br><br>(Super. Ct. No. 512128)<br><br>**OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Rubén A. Villalobos, Judge.

Birgit Fladager, District Attorney, and Jon Appleby, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Martin Baker for Real Party in Interest.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, as Amicus Curiae on behalf of Real Party in Interest.

-ooOoo-

**SEE DISSENTING OPINION**

Many changes have been made to the criminal and quasi-criminal laws of this state over the last few years. Some have been brought about by acts of the Legislature, while others were the result of the voter initiative process. One of the changes was the enactment, in 2016, of Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Proposition 57 or the Act). In part, Proposition 57 eliminated a prosecutor's ability to directly file charges in criminal (adult) court against minors who were 14 years of age or older at the time of their alleged offenses, and instead required prosecutors to obtain juvenile court approval to do so.[1] Subsequently, in 2018, the Legislature enacted Senate Bill No. 1391 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1) (Senate Bill No. 1391), which prohibits the transfer of 14- and 15-year-old offenders to criminal court in virtually all circumstances.

The question before us is whether Senate Bill No. 1391 unconstitutionally amends Proposition 57. We conclude it does not. Because it is valid legislation, we agree with the ruling of the lower court and so deny the instant petition for writ of mandate.

## PROCEDURAL HISTORY

On August 5, 2010, real party in interest T.D. (T.D.), then 14 years old, shot and killed Chaz Bettencourt during an attempted carjacking. Petitioner, the District Attorney of Stanislaus County (the District Attorney) directly filed charges against T.D. in criminal

---

[1] "The juvenile court and the criminal court are divisions of the superior court, which has subject matter jurisdiction over criminal matters and civil matters, including juvenile proceedings. (See Cal. Const., art. VI, § 10.) When exercising the jurisdiction conferred by the juvenile court law, the superior court is designated as the juvenile court. (Welf. & Inst. Code, § 245.)" (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548, fn. 3 (*Manduley*).) Accordingly, when we refer to the juvenile court or the criminal (adult) court, we are referring to the statutory authority of the particular division of the superior court, in a given case, to proceed under the juvenile court law or the law generally applicable in criminal actions. (See *In re Harris* (1993) 5 Cal.4th 813, 837.)

Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

court as permitted by the law then in effect.  (§ 707, former subd. (d)(2).)  The jury convicted T.D. of first degree murder during the commission of an attempted carjacking (Pen. Code, § 187, subd. (a)) and attempted carjacking during which a principal personally and intentionally discharged a firearm, proximately causing death (*id.*, §§ 215, subd. (a), 664, 12022.53, subds. (d), (e)(1)), and he was sentenced to a lengthy prison term (*People v. Diaz* (2018) 21 Cal.App.5th 538, 541).

While T.D.'s appeal was pending, Proposition 57 went into effect, and the California Supreme Court held it applied retroactively to nonfinal cases (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303-304 (*Lara*)).  As a result, we conditionally reversed the judgment and remanded the matter to respondent Stanislaus County Superior Court with directions to, in pertinent part, conduct a juvenile transfer hearing and either (1) treat the convictions as juvenile adjudications, and impose an appropriate disposition, if it found it would not have transferred T.D. to a court of criminal jurisdiction; or (2) reinstate T.D.'s convictions and sentence if it found it would have transferred T.D. to a court of criminal jurisdiction because he was not a fit and proper subject to be dealt with under the juvenile court law.  (*People v. Diaz*, *supra*, 21 Cal.App.5th at p. 546.)

On August 20, 2018, the District Attorney filed a motion to transfer T.D. to criminal court pursuant to section 707, subdivisions (a) and (b).  The probation officer's transfer report recommended that T.D. — who would be 23 years old at the time of the January 9, 2019 hearing — be transferred to the jurisdiction of the adult criminal court.

On January 1, 2019, Senate Bill No. 1391 went into effect.  The next day, T.D. asserted his right to a speedy disposition pursuant to section 702.  He argued that based on his age at the time of the offenses, the new law rendered him no longer subject to transfer to a court of criminal jurisdiction; hence, the court was required to impose an appropriate juvenile disposition.

3.

The District Attorney responded by asking the court to disregard or overrule what she deemed T.D.'s "demurrer." She further argued the court should set a transfer hearing in accord with this court's instructions, on the ground Senate Bill No. 1391 is an unconstitutional amendment to Proposition 57. T.D. disagreed, and asserted the court no longer had any authority to transfer the case out of the juvenile justice system.

A hearing was held on January 16, 2019, with respect to the constitutionality of Senate Bill No. 1391. After lengthy argument, the court found the purpose of Proposition 57 was to limit the class of juveniles who could be tried as adults. The court concluded Senate Bill No. 1391 is constitutional and applies in the present case, and so confirmed a date for T.D.'s dispositional hearing.

The court also issued a written, more detailed ruling. The court determined that Senate Bill No. 1391 is retroactive under *Lara*, in that it "is as much ameliorative as Proposition 57 . . . ." The court summarized the "crux" of the District Attorney's main argument as: "Proposition 57 promised voters that a juvenile judge would have discretion to decide whether any minor should be tried in adult court, but [Senate Bill No.] 1391 removes that discretion, thereby rendering it unconstitutional." The court found the argument unpersuasive and concluded Senate Bill No. 1391 is consistent with and furthers the intent of the Act by limiting the types of minors who can be tried as adults and emphasizing rehabilitation for juveniles. The court also noted case law showing a trend in recent years toward reducing punishment for juvenile offenders. Last, the court found no indication voters were aware a provision barring transfer of 14- and 15-year-olds to adult court was removed from Proposition 57 before the measure was submitted to the electorate. It noted the Legislature made a specific finding the statutory scheme under Senate Bill No. 1391 is consistent with and furthers the intent of the Act, and it found the District Attorney failed to overcome the "strong presumption" Senate Bill No. 1391 is constitutional.

4.

The District Attorney petitioned this court for a writ of mandate, arguing, for many of the reasons presented below, that Senate Bill No. 1391 constitutes an unconstitutional amendment of Proposition 57, and that the lower court acted in excess of its jurisdiction in not holding a transfer hearing and effectively dismissing the transfer motion. We stayed the dispositional hearing and issued an order to show cause. In his return, T.D. argues Senate Bill No. 1391 is constitutional, and so the court acted within its jurisdiction when it set a juvenile dispositional hearing. The Attorney General submitted an amicus brief in which he takes the position Senate Bill No. 1391 is consistent with and furthers the intent of Proposition 57, because it limits prosecutors' authority to try persons under 16 years of age in criminal court.

## DISCUSSION

"The juvenile court generally exercises delinquency jurisdiction over a minor who has violated the law while under the age of 18. [Citations.]" (*Juan G. v. Superior Court* (2012) 209 Cal.App.4th 1480, 1487 (*Juan G.*); see § 602.) "Historically, a child could be tried in criminal court only after a judicial determination, before jeopardy attached, that he or she was unfit to be dealt with under juvenile court law. Since 1975 the procedural requirements for fitness hearings have been established by section 707. [Citations.]" (*Juan G.*, at p. 1488.)

As enacted in 1975, section 707 did not permit minors under the age of 16 to be tried as adults. (Former § 707, Stats. 1975, ch. 1266, § 4, p. 3325.)

As of January 1, 1995, Assembly Bill No. 560 lowered the age to 14 for minors alleged to have committed certain specified offenses, including murder. (§ 707, former subds. (d), (e), as amended by Stats. 1994, ch. 453, § 9.5.)

Effective January 1, 2000, certain minors who were 16 years of age or older at the time they committed specified crimes were required to be prosecuted in a court of criminal jurisdiction, without any requirement of a determination by the juvenile court that the minor was unfit for treatment under the juvenile court law. (§ 602, former

5.

subd. (b), as amended by Stats. 1999, ch. 996, § 12.2; see *Manduley*, *supra*, 27 Cal.4th at p. 549; *Juan G.*, *supra*, 209 Cal.App.4th at pp. 1488-1489.)

Further amendments were enacted by Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, which was approved by voters at the March 7, 2000 Primary Election (Proposition 21). "Proposition 21 revised the juvenile court law to broaden the circumstances in which minors 14 years of age and older [could] be prosecuted in the criminal division of the superior court, rather than in juvenile court" (*Manduley*, *supra*, 27 Cal.4th at p. 549), in some instances even mandating such prosecution (§§ 602, former subd. (b), 707, former subd. (d); see *Lara*, *supra*, 4 Cal.5th at p. 305).

Effective November 9, 2016, "Proposition 57 changed the procedure again, and largely returned California to the historical rule." (*Lara*, *supra*, 4 Cal.5th at p. 305; see Cal. Const., art. II, § 10, former subd. (a).) The Act eliminated prosecutors' ability to file charges against juveniles directly in criminal court. Certain categories of minors — 16- and 17-year-olds who violated any felony criminal statute, and 14- and 15-year-olds who committed enumerated serious offenses, including murder — could still be tried in criminal court, " 'but only after a juvenile court judge conduct[ed] a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated. [Citation.]' [Citation.]" (*Lara*, *supra*, 4 Cal.5th at pp. 305-306, fn. omitted; see § 707, former subds. (a), (b).) The Act further eliminated the presumption that a minor alleged to have committed certain specified serious offenses was not a fit and proper subject to be dealt with under the juvenile court law. (See § 707, former subd. (c).)

Less than two years later, the Legislature enacted Senate Bill No. 1391. Senate Bill No. 1391 eliminates prosecutors' ability to seek transfer of 14- and 15-year-olds from juvenile court to criminal court, except where such a minor is alleged to have

6.

committed a specified serious offense and is not apprehended prior to the end of juvenile court jurisdiction. (§ 707, subds. (a)(1), (2) & (b).)

At issue in this case is the validity of Senate Bill No. 1391. If it constitutionally amended Proposition 57, T.D. cannot be transferred to criminal court and must receive an appropriate disposition for his offenses that is within the juvenile court law. If Senate Bill No. 1391 constitutes an invalid amendment to Proposition 57, then the juvenile court must conduct a transfer hearing and proceed in accordance with our disposition in *People v. Diaz*, *supra*, 21 Cal.App.5th at page 546.

Subdivision (c) of article II, section 10 of the California Constitution permits the Legislature to amend "an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment . . . without the electors' approval." Under this provision, " 'the voters have the power to decide whether or not the Legislature can amend or repeal initiative statutes. This power is absolute and includes the power to enable legislative amendment *subject to conditions attached by the voters*. [Citations.]' " (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1251 (*Amwest*).) In other words, "[t]he Legislature may not amend an initiative statute without subsequent voter approval unless the initiative permits such amendment, 'and then only upon whatever conditions the voters attached to the Legislature's amendatory powers.' [Citations.]" (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 568.) The purpose of this constitutional limitation on the Legislature's power " 'is to "protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent." [Citations.]' [Citation.] In this vein, decisions frequently have asserted that courts have a duty to ' " 'jealously guard' " ' the people's initiative power, and hence to ' " 'apply a liberal construction to this power wherever it is challenged in order that the right' " ' to resort to the initiative process ' " 'be not improperly annulled' " ' by a legislative body. [Citations.]" (*People v. Kelly* (2010) 47 Cal.4th 1008, 1025 (*Kelly*).)

7.

An "amendment" for purposes of article II, section 10, subdivision (c) of the California Constitution "includes a legislative act that changes an existing initiative statute by taking away from it.  [Citations.]"  (*Kelly*, *supra*, 47 Cal.4th at pp. 1026-1027.)

Proposition 57 deleted former subdivision (b) of section 602, which had mandated prosecution, in criminal court, of 14- and 15-year-olds alleged to have committed specified serious offenses, including special circumstance murder.  (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 4.1, pp. 141-142 (Voter Information Guide).)  It also amended section 707, subdivision (a)(1) to provide:  "In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any felony criminal statute, or of an offense listed in subdivision (b) when he or she was 14 or 15 years of age, the district attorney or other appropriate prosecuting officer may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction . . . ."  (Voter Information Guide, *supra*, text of Prop. 57, § 4.2, p. 142, italics omitted.)  Senate Bill No. 1391 amended subdivision (a)(1) of section 707 to read:  "In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any offense listed in subdivision (b) or any other felony criminal statute, the district attorney or other appropriate prosecuting officer may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction. . . ."

Senate Bill No. 1391 constitutes an amendment to Proposition 57 for purposes of article II, section 10, subdivision (c) of the state Constitution, because it removes the ability of prosecutors to seek transfer of 14- and 15-year-olds to criminal court.[2]

---

[2]     Amicus curiae the Attorney General impliedly agrees Senate Bill No. 1391 amended Proposition 57.  T.D. argues it actually amended Assembly Bill No. 560, which, as we have described, authorized the prosecution of 14- and 15-year-olds in criminal court.  T.D. says neither Proposition 21 nor Proposition 57 "purported to restrict or eliminate the [L]egislature's ability to continue to determine the age range of minors that may be prosecuted as adults," but instead "merely changed the procedures by which

8.

Section 5 of Proposition 57 provides: "This act shall be broadly construed to accomplish its purposes. The provisions of Sections 4.1 and 4.2 of this act may be amended so long as such amendments are consistent with and further the intent of this act by a statute that is passed by a majority vote of the members of each house of the Legislature and signed by the Governor." (Voter Information Guide, *supra*, text of Prop. 57, p. 145.) Thus, Senate Bill No. 1391 is valid under article II, section 10, subdivision (c) of the California Constitution if its provisions "are consistent with and further the intent of" the Act.

In section 3 of Senate Bill No. 1391, the Legislature found and declared that the statute "is consistent with and furthers the intent of Proposition 57 . . . ." " '[L]egislative findings, while not binding on the courts, are given great weight and will be upheld unless they are found to be unreasonable and arbitrary. [Citations.]' [Citation.] But we also must enforce the provisions of our Constitution and 'may not lightly disregard or blink at . . . a clear constitutional mandate.' [Citation.] 'In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the [a]ct. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the [a]ct. [Citations.]' [Citation.]" (*Amwest*, *supra*,

children within a legislatively defined age range can be prosecuted in adult criminal court." We agree the longstanding practice of allowing particular 14- and 15-year-olds to be prosecuted in criminal court was continued by Proposition 57. (See *People v. Superior Court (Alexander C.)* (2019) 34 Cal.App.5th 994, 1002 (*Alexander C.*).) Nevertheless, Senate Bill No. 1391 constitutes an amendment to the Act under multiple legal definitions. (See *Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1484-1486.)

The District Attorney argues that because section 707, subdivision (a)(1), as amended by Proposition 57, plainly and unambiguously allows prosecutors to seek the transfer of 14- and 15-year-olds to criminal courts if such minors are alleged to have committed an enumerated offense, "the inquiry should end there." This may end our inquiry concerning whether Senate Bill No. 1391 constitutes an amendment of the Act, but it is not determinative of whether that amendment is valid.

11 Cal.4th at p. 1252.)  In other words, " 'a strong presumption of constitutionality supports the Legislature's acts.  [Citations.]'  [Citation.]" (*Id*. at p. 1253.)

This does not mean we apply a deferential standard of review, however. Proposition 57's "limitation on legislative authority 'must be given the effect the voters intended it to have. . . .  The court must exercise 'effective judicial review,' and determine whether, 'by any reasonable construction, it can be said that the statute [is consistent with and furthers the intent] of [the initiative].'  [Citation.]" (*Gardner v. Schwarzenegger* (2009) 178 Cal.App.4th 1366, 1374.)  "Accordingly, starting with the presumption that the Legislature acted within its authority, we shall uphold the validity of [Senate Bill No. 1391] if, by any reasonable construction, it can be said that the statute [is consistent with and furthers the intent] of Proposition [57]." (*Amwest*, *supra*, 11 Cal.4th at p. 1256.)  "Because this determination is a question of law [citation], the [lower] court's decision on the matter is subject to our independent review." (*Gardner*, *supra*, at p. 1374.)

Our starting point is *Lara*, *supra*, 4 Cal.5th 299.  In that case, the California Supreme Court concluded Proposition 57 applied retroactively "to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted." (*Lara*, *supra*, at p. 304.)  The state high court reasoned that while Proposition 57 did not ameliorate punishment for a particular crime, it did ameliorate punishment for a class of persons, namely juveniles; hence, the inference of retroactivity addressed in cases such as *In re Estrada* (1965) 63 Cal.2d 740 and *People v. Francis* (1969) 71 Cal.2d 66, applied. (*Lara*, *supra*, at p. 308.)  The court concluded:  "Proposition 57 is an 'ameliorative change[] to the criminal law' that we infer the legislative body *intended 'to extend as broadly as possible*.'  [Citation.]" (*Id*. at p. 309, italics added.)

The District Attorney argues *Lara*'s conclusion regarding the Act's intent pertains only to retroactivity and so is improperly applied "here, where a statutory analysis is necessary to look at the voter and legislative intents and the plain language of"

10.

Proposition 57 and Senate Bill No. 1391. We find nothing in Proposition 57 to suggest voters intended the Act to extend as broadly as possible for one purpose but not for another. Such a conclusion would be manifestly unreasonable, particularly in light of the express requirement of broad construction contained in section 5 of the Act.

The District Attorney's argument also fails as a matter of statutory interpretation. "When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure. [Citation.]" (*People v. Superior Court (Pearson)*, *supra*, 48 Cal.4th at p. 571.)

The language of Proposition 57 permitting only amendments that "are consistent with and further the intent of this act" (Voter Information Guide, *supra*, text of Prop. 57, § 5, p. 145) is, for want of punctuation, patently ambiguous. It can be read to allow amendments that are consistent with the express language of the Act and that further the intent of the Act; or, it can be read to allow amendments that are consistent with the intent of the Act and that further the intent of the Act.

If the amendatory language is interpreted in the first manner, Senate Bill No. 1391 unconstitutionally amends the Act, because its removal of 14- and 15-year-olds from the possibility of prosecution in adult court is inconsistent with the express language of the Act. Indeed, limiting authorized amendments to those consistent with the express language of the Act would appear to preclude *any* amendment that deletes or repeals any portion of the Act, no matter how consistent such action might be with the purpose of the Act itself. Had that been the aim of the language in question, it seems likely

11.

Proposition 57 would have been drafted so as not to permit any amendments whatsoever absent voter approval.  (See, e.g., *Kelly*, *supra*, 47 Cal.4th at p. 1042.)

Our Supreme Court has concluded voters intended Proposition 57 to extend as broadly as possible (*Lara*, *supra*, 4 Cal.5th at p. 309); hence, we must interpret it broadly. Accordingly, we find that reading section 5 of the Act to permit amendments that are consistent with, and further, the intent of the Act most closely comports with voter intent.

In order to determine whether Senate Bill No. 1391 falls within the Act's limitation on amendments, so read, we focus on the expressly stated and implied intents and purposes of the Act.  "In identifying the purposes [and, by logical extension, the intent] of an initiative, we examine the initiative *as a whole*, and are guided by, but not limited to, its general statements of purpose.  [Citation.]  We must give effect to an initiative's specific language, as well as its major and fundamental purposes. [Citations.]"  (*Gardner v. Schwarzenegger*, *supra*, 178 Cal.App.4th at p. 1374, italics added; see *Amwest*, *supra*, 11 Cal.4th at pp. 1256-1257.)

Section 2 of Proposition 57 states:  "In enacting this act, it is the purpose and intent of the people of the State of California to:  [¶]  1. Protect and enhance public safety.  [¶]  2. Save money by reducing wasteful spending on prisons.  [¶]  3. Prevent federal courts from indiscriminately releasing prisoners.  [¶]  4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles.  [¶]  5. Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court."  (Voter Information Guide, *supra*, text of Prop. 57, p. 141.)

We begin with the two statements of purpose and intent expressly related to juvenile offenders.  The first of these is to "[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles."  (Voter Information Guide, *supra*, text of Prop. 57, § 2, p. 141.)  Juvenile offender laws seek to rehabilitate (*In re Julian R.* (2009) 47 Cal.4th 487, 497), and rehabilitation of minors is the goal of the juvenile

12.

justice system (*People v. Vela* (2018) 21 Cal.App.5th 1099, 1104; see *Lara*, *supra*, 4 Cal.5th at p. 306).

Proposition 57 sought to increase the number of minors in the juvenile justice system, thereby promoting juvenile rehabilitation, by eliminating Proposition 21's system of direct filing in criminal court. "When youth are given age-appropriate services and education that are available in the juvenile justice system, they are less likely to recidivate. . . . Keeping 14 and 15 year olds in the juvenile justice system will help to ensure that youth receive treatment, counseling, and education they need to develop into healthy, law abiding adults." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1391, as amended May 25, 2018, p. 4.) Evidence-based materials were cited in support of this statement. (*Id*. at pp. 4-5.) For that reason, we cannot say it was unreasonable for the Legislature to conclude Senate Bill No. 1391 promotes the goal of juvenile rehabilitation, while protecting and enhancing public safety, by ensuring virtually all 14- and 15-year-olds who commit crimes — and who are among the youngest teens in the justice system — will be processed through the juvenile justice system.

The second juvenile-specific statement of purpose and intent is to "[r]equire a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (Voter Information Guide, *supra*, text of Prop. 57, § 2, p. 141.) Senate Bill No. 1391 maintains this intent. (*Alexander C.*, *supra*, 34 Cal.App.5th at p. 1001.) Significantly, Proposition 57 neither granted prosecutors the right to seek the transfer of 14- and 15-year-olds to criminal court nor set the lowest age at which such a transfer could be effected. Rather, it merely continued the law in that regard. Nowhere does the expressly stated purpose and intent mandate the inclusion of 14- and 15-year-olds in the class of transferable children. Although the Legislative Analyst's analysis of the Act explained the circumstances under which the measure would permit such transfer (Voter Information Guide, *supra*, analysis of Prop. 57 by Legis. Analyst, p. 56), nothing in that

13.

analysis or the arguments for and against the Act can be read as suggesting to voters that the age range was a focus of the measure, as opposed to having a juvenile court judge make whatever transfer decision was allowed.

The Act's overriding purpose was to channel more juvenile offenders into the juvenile justice system and to have a juvenile court judge make the transfer decision if one was to be made, not to set in stone the age parameters for such a determination. That Proposition 57 permitted the transfer of 14- and 15-year-olds to criminal court in some circumstances does not mean precluding such transfer is inconsistent with and/or does not further the intent of the Act, particularly when we take into account that voters desired the Act to "be broadly construed to accomplish its purposes." (Voter Information Guide, *supra*, text of Prop. 57, § 5, p. 145.)

Proposition 57's remaining purposes and intents — to "[p]rotect and enhance public safety," "[s]ave money by reducing wasteful spending on prisons," and "[p]revent federal courts from indiscriminately releasing prisoners" (Voter Information Guide, *supra*, text of Prop. 57, § 2, p. 141) — are also furthered by Senate Bill No. 1391. More minors kept within the juvenile justice system means fewer prisoners. Additionally, we cannot say keeping virtually all 14- and 15-year-olds in a system that provides treatment and services to achieve rehabilitation fails to enhance public safety.

The District Attorney points out that given the passage of time since his crimes and his current age, T.D. likely will not remain under juvenile court jurisdiction long enough to receive any meaningful rehabilitative services. (See §§ 607, 1769; but see § 1800.) T.D.'s individual circumstances do not mean Senate Bill No. 1391 is invalid, however. Rather, this predicament is primarily the result of Proposition 57 being found retroactive in the first instance. The danger of the result the District Attorney foresees is readily apparent, and the California Supreme Court has acknowledged the wastefulness of postponing juvenile court proceedings until after the juvenile was convicted in adult court. (*Lara*, *supra*, 4 Cal.5th at p. 314.) Nevertheless, the question of retroactivity has

14.

been settled, and we lack the authority to reexamine the issue. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

We are mindful of the pain these changes in the law almost certainly will cause victims and their loved ones. Our function is not, however, to judge the wisdom of statutes. (*People v. Zapien* (1993) 4 Cal.4th 929, 954-955.)

The District Attorney argues Senate Bill No. 1391 "undercuts rehabilitation and emboldens future crime" by ensuring 14- and 15-year-olds who commit the serious and violent crimes listed in section 707, subdivision (b) will never face the deterrent effect of having a prior conviction under the three strikes law. This is so, the argument runs, because the three strikes law requires that a juvenile who remains in the juvenile court system must have been 16 years of age or older at the time he or she committed the offense sought to be used as a strike (Pen. Code, §§ 667, subd. (d)(3)(A), 1170.12, subd. (b)(3)(A)), and Senate Bill No. 1391 precludes any 14- or 15-year-old from incurring a strike offense because now such a person can never be tried as an adult.

It does not follow that Senate Bill No. 1391 fails to further Proposition 57's overall intent and purpose. The District Attorney says that prior strike offenses serve as a rehabilitative deterrent to future criminal acts. She also argues the longer prison sentences mandated for strike offenders increase the protection and enhancement of public safety. This may be so, but had the electorate agreed with the District Attorney's position, it seems unlikely voters would have eliminated prosecutorial direct-filing capabilities with respect to any of the offenses listed in section 707, subdivision (b), regardless of the age of the offender.[3]

---

**3**    The District Attorney also claims Senate Bill No. 1391's inclusion of an exception for 14- and 15-year-olds who are not apprehended prior to the end of juvenile court jurisdiction, illegally extends the statute of limitations in some instances. We decline to address this argument. " 'Obvious reasons of fairness militate against consideration of an issue [or new theories] raised initially' " in what amounts to a reply brief. (*People v. Carrasco* (2014) 59 Cal.4th 924, 990; accord, *People v. Romero and Self* (2015) 62

"[I]n discerning the purposes of Proposition [57], we are guided by, but are not limited to, the general statement of purpose found in the initiative." (*Amwest*, *supra*, 11 Cal.4th at p. 1257.) Thus, the District Attorney asserts the Act's purpose and intent "can also be found in the actual changes that it brought." She argues the Act's intent was to continue the practice of permitting prosecution of 14- and 15-year-olds who commit the most serious offenses in criminal court, while merely preventing a prosecutor from being the sole arbiter of when such prosecution is appropriate.

Permitting prosecution of young teens as adults is not a change wrought by Proposition 57, however, but is a continuation of prior practice. If the law prior to Proposition 57's enactment had permitted only minors 16 years of age or older to be tried as adults, and Proposition 57 had affirmatively lowered the age to 14, the District Attorney's argument against the validity of Senate Bill No. 1391 would be persuasive. That is not the situation, however. Proposition 57 did not expand, nor are we convinced it was intended to establish or solidify, the age at which minors can be tried as adults.

The District Attorney also points to the fact that the original version of Proposition 57 established 16 years old as the minimum age at which juveniles could be transferred to adult court, but this language was specifically deleted after a review process. The District Attorney argues: "It is preposterous to suggest that [Senate Bill No.] 1391's amendments to Proposition 57 are 'consistent with and further the intent' of Proposition 57 when the *proponents* of Proposition 57 *intentionally omitted* identical language as that now enacted by [Senate Bill No.] 1391."

" 'The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision.' [Citation.]" (*People v. Soto* (2011) 51

---

Cal.4th 1, 25.) Our job is to determine whether Senate Bill No. 1391 is a valid amendment of an initiative measure, and not to resolve every possible future challenge to some of its provisions.

16.

Cal.4th 229, 245.)  Such rejection or elimination "is 'significant indicia of legislative intent.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 57.)  On the other hand, " '[u]npassed bills, as evidences of legislative intent, have little value.' [Citation.]  The same is true of unpassed constitutional amendments." (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 238; accord, *People v. Sparks* (2002) 28 Cal.4th 71, 87, fn. 20.)

In Proposition 57's case, the change was made after the Act in its original form was posted on the Attorney General's Web site for a 30-day public comment period.  No public comments were received, but the Act's proponents spoke with a number of individuals and special interest groups.  This eventually led to the version of the Act that was submitted to voters as Proposition 57.  (See *Brown v. Superior Court* (2016) 63 Cal.4th 335, 340-341.)

The District Attorney says the *drafters* of Proposition 57 clearly were aware of arguments for and against transfer of 14- and 15-year-olds to criminal court.  This is true.  Unlike inferences to be drawn from amendments made during the legislative process, however, we cannot conclude from drafting changes made prior to an initiative measure's submission to voters that *voters* were aware of, and so necessarily rejected, the measure's original provisions.  The California Supreme Court "has made it clear that the 'motive or purpose of the drafters of a statute is not relevant to its construction, absent reason to conclude that the body which adopted the statute was aware of that purpose and believed the language of the proposal would accomplish it.  [Citations.]  The opinion of drafters or legislators who sponsor an initiative is not relevant since such opinion does not represent the intent of the electorate and we cannot say with assurance that the voters were aware of the drafters' intent.  [Citations.]' [Citation.]" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 904; accord, *People v. Valencia* (2017) 3 Cal.5th 347, 368-369, fn. 9.)  Nothing in Proposition 57's text or the accompanying materials suggested the initiative

17.

was *rejecting* 16 years old as the minimum age for transfer to criminal court. (See *Valencia*, *supra*, at p. 364 & fn. 5.)

The District Attorney's reliance on *Kelly*, *supra*, 47 Cal.4th 1008, does not assist her. In that case, the electorate adopted Proposition 215, the Compassionate Use Act of 1996 (CUA), which provided an affirmative defense to prosecution for the crimes of possession and cultivation of marijuana " 'for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.' [Citation.]" (*Kelly*, *supra*, at pp. 1012-1013, fn. omitted.) The CUA did not specify the amount of marijuana a patient could possess or cultivate. (*Kelly*, *supra*, at p. 1013.) The Legislature subsequently prescribed a specific amount of marijuana a " 'qualified patient' " could possess or cultivate. (*Id*. at p. 1012.)

The California Supreme Court agreed with the parties that the Legislature's enactment, which imposed quantity limits where the CUA imposed none, amended the CUA in violation of article II, section 10, subdivision (c) of the California Constitution. (*Kelly*, *supra*, 47 Cal.4th at pp. 1042-1043.) The District Attorney's argument in the present case, however — that Senate Bill No. 1391 unconstitutionally amended the Act because it took away rights granted by the Act — misinterprets *Kelly*. As noted in that opinion, the CUA did not grant the Legislature *any* authority to amend the initiative. (*Kelly*, *supra*, at p. 1042.) Thus, the issue before the state high court was whether the subsequent legislative enactment constituted an amendment within the meaning of the California Constitution. The issue before us, in contrast, is whether the subsequent legislative enactment is "consistent with and further[s] the intent of" the Act. (Voter Information Guide, *supra*, text of Prop. 57, § 5, p. 145.) Moreover, unlike the situation in *Kelly*, in which the legislative enactment limited rights granted by the voter initiative, Senate Bill No. 1391 did not limit or take away rights granted by Proposition 57. Prosecutorial ability to request transfer of a 14- or 15-year-old to criminal court is not a

right or authority granted by Proposition 57.  The Act simply continued existing procedure in that regard.

Finally, the District Attorney argues that a finding Senate Bill No. 1391 is constitutional could lead to the potential nullification of Proposition 57 by enabling the Legislature to prohibit the transfer of any juveniles to adult court.  It is true that " '[w]here uncertainty exists consideration should be given to the consequences that *will flow* from a particular interpretation.'  [Citation.]"  (*People v. Valencia*, *supra*, 3 Cal.5th at p. 358, italics added.)  The consequences that will flow from our interpretation that Senate Bill No. 1391 is constitutional, are consistent with and further the intent of Proposition 57.  We decline to join the District Attorney in speculating as to what the Legislature might do in the future, nor does such speculation furnish grounds for invalidating legislation.[4]

Voters intended Proposition 57 to extend as broadly as possible.  The amendatory language of section 5 of the Act is ambiguous.  When we construe that language and the Act as a whole consistently with the voters' intent, as we must, we conclude Senate Bill No. 1391 is constitutional.

## DISPOSITION

The order to show cause previously issued is discharged, and the petition for writ of mandate is denied.  The stay issued by this court on January 23, 2019, shall remain in effect only until this opinion becomes final in all courts in this state or the California

---

[4]     "[A]lthough California's strict rule [(Cal. Const., art. II, § 10, subd. (c))] may have been motivated by fear that the Legislature 'would hastily tear down what the people have enacted through the initiative process, the general experience in the United States is that legislatures are reluctant to change laws that have been adopted through the initiative process,' and hence there remains 'no valid reason . . . for significantly limiting the legislature's ability to amend and repeal initiative statutes.'  [Citation.]"  (*Kelly*, *supra*, 47 Cal.4th at pp. 1042-1043, fn. 59.)

19.

Supreme Court grants a hearing, whichever shall first occur; thereafter said order is vacated and said stay is dissolved.

_____

DETJEN, J.

I CONCUR:

_____

PEÑA, J.

Poochigian, Acting P. J., dissenting.

One purpose of the Public Safety and Rehabilitation Act of 2016 (Proposition 57) is to *require* that judges determine whether juveniles should be transferred to criminal court. In contrast, Senate Bill No. 1391 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1) effectively *prohibits* judges from determining whether certain juveniles should be transferred to criminal court. Whatever the wisdom of each enactment, it cannot be said that Senate Bill 1391 "further[s] the intent" (Prop. 57, § 5) of Proposition 57. As a result, Senate Bill 1391 is unconstitutional. (See Cal. Const., art II, § 10(c).) I respectfully dissent from the majority's contrary conclusion.

T.D. argues Senate Bill 1391 is consistent with both the enumerated and reasonably inferable purposes of Proposition 57. The text of each enactment indicates otherwise.

A. *Enumerated Purposes of Proposition 57*

In section 2, Proposition 57 provides:

"In enacting this act, it is the purpose and intent of the people of the State of California to:

"1. Protect and enhance public safety.

"2. Save money by reducing wasteful spending on prisons.

"3. Prevent federal courts from indiscriminately releasing prisoners.

"4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles.

"5. Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court."

The enumerated intent to "require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court," has two clear components. First, the phrasing "Require a judge … to decide whether juveniles should be tried in adult court" means exactly what it says. The intent of Proposition 57 is to "require" a particular person (i.e.,

a judge) to make a particular decision (i.e., whether a juvenile should be tried as an adult). Second, the phrase, "not a prosecutor" embodies an intent to deny prosecutors the power to ultimately decide whether juveniles should be tried in adult court.

Senate Bill 1391 clearly conflicts this enumerated intent. Under Senate Bill 1391, neither a prosecutor *nor a judge*, may decide whether 14- and 15-year-old juveniles may be tried in adult court. Instead, the *Legislature* has made the decision for 14- and 15-year-old juveniles.[1] This is plainly in conflict with Proposition 57's stated purpose of *requiring* a judge to decide whether juveniles should be tried in adult court. (Prop. 57, § 2.)

Other courts of appeal have concluded otherwise by interpreting item No. 5 to evince *only* an intent to remove power from the prosecutor, while minimizing the intent to *require* the power be exercised by a judge. (See, e.g., *People v. Superior Court (K.L.)* (2019) 36 Cal.App.5th 529, 539 ["This language does not suggest a focus on retaining the ability to charge juveniles in adult court so much as removing the discretion of district attorneys to make that decision."]; see also maj. opn., *ante*, at pp. 13–14.) Nothing in section 2 or the substantive provisions of Proposition 57 support such a reading.

Because the fifth enumerated intent of Proposition 57 is so clearly in conflict with Senate Bill 1391, we need not delve into the abstract, policy-laden questions of whether Senate Bill 1391 also conflicts with Proposition 57's other goals of enhancing public safety and saving money. (See Prop. 57, § 2.)

B.      *Reasonably Inferable Purposes of Proposition 57*

However, our analysis does not end with the general, express statements of intent in Proposition 57. (See *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1256–

---

[1] Unless the juvenile was not apprehended prior to the end of juvenile court jurisdiction.

2.

1257.)  We must examine the enactment as a whole to derive its purposes.  (See *id.* at p. 1257.)

In that vein, T.D. argues the goal of Proposition 57 was to have fewer youths tried in adult court.  And since Senate Bill 1391 "further reduc[es] the number of juvenile[s] subject to prosecution as adults," it necessarily furthers the intent of Proposition 57.  This overly-simplistic approach ignores the fact that Proposition 57's purposes are multi-faceted.

Proposition 57 may have intended to reduce the number of youths to be prosecuted as adults … but only up to a point. Proposition 57, like any enactment, was written to "go so far and no further."  (*Michigan v. Bay Mills Indian Cmty.* (2014) 572 U.S. 782, 794.)  "[S]tatutes have stopping points as well as general objectives, and how far to go in pursuit of those objectives is integral to the legislative choice.  [Citation.]"  (*NLRB v. HH3 Trucking, Inc.* (7th Cir. 2014) 755 F.3d 468, 471.)  "[L]imitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations.  [Citation.]"  (*Rapanos v. United States* (2006) 547 U.S. 715, 752.)

Proposition 57 sought to find the balancing point of several disparate objectives, including enhancing public safety, saving money, and emphasizing rehabilitation.  The balance it struck is the result of *both* the considerations of "leniency" emphasized by T.D. *and* various considerations pushing in the other direction.  T.D. would have us cherry-pick a single goal and conclude any enactment advancing that *singular* goal of leniency towards juveniles must further the *multi-faceted* purposes of Proposition 57, regardless of how contrary that enactment may be to Proposition 57's other purposes.

Surely, one purpose of Proposition 57 is to emphasize rehabilitation for juveniles.  (Prop. 57, § 2.)  But another purpose is to require that judges determine whether juveniles – including 14 and 15 year olds – should be tried as adults.  (*Ibid.*)  While T.D. would have us elevate the former purpose above the latter, there is "nothing in

3.

Proposition 57 to suggest voters intended the Act to extend as broadly as possible for one purpose but not for another." (Maj. opn., *ante*, at p. 11.)

Similarly, the Attorney General notes Senate Bill 1391 "moves the law in the same direction as Proposition 57." But the "direction" in which an enactment moves the law is only one indicator of purpose. How *far* the enactment moves the law in that direction is another indicator of intent and is "no less" a part of its "purpose."[2] (*Rapanos v. United States*, *supra*, 547 U.S. at p. 752.) "[S]tatutes have stopping points as well as general objectives, and how far to go in pursuit of those objectives is integral to the legislative choice. [Citation.]" (*NLRB v. HH3 Trucking, Inc.*, *supra*, 755 F.3d at p. 471.) That is especially true when the "stopping point" at issue – reducing the number of juveniles tried as adults but still ultimately requiring judges to determine whether juveniles will be tried as adults – is an *express* purpose of the initiative.

In a related contention, some have observed that "the practice of allowing certain 14 and 15 year olds to be prosecuted in criminal court is not an 'actual change[]' wrought by Proposition 57, but a continuation of a prior practice." (*People v. Superior Court (Alexander C.*) (2019) 34 Cal.App.5th 994, 1002; see also maj. opn., *ante*, at pp. 15–16.) But the question is not whether Proposition 57 was the first law to permit prosecution of 14- and 15-year-olds as adults. Rather, the question is whether the continuation of that prior practice embodies an intent of Proposition 57. If so, then Senate Bill 1391's *dis*-continuation of that same practice cannot be said to further the intent of Proposition 57.

And there can be no doubt that Proposition 57 did intend to preserve the prior practice of permitting some 14 and 15 year olds to be tried as adults. Proposition 57

---

[2] Otherwise, the import of the Attorney General's approach would be that all laws moving in a particular "direction" – regardless of how and to what extent they move in that direction – are necessarily consistent with one another. At oral argument, the Deputy Attorney General acknowledged the consequences of this reasoning: The Legislature could constitutionally prohibit the transfer of 16- and 17-year-old juveniles upon appropriate evidence.

made *affirmative* statutory tweaks to ensure that, notwithstanding the closely related changes it made to juvenile law, 14 and 15 year olds could still be transferred to criminal court and prosecuted as adults. (Prop. 57, § 4.2 [altering statutory language to read "when he or she was 14 or 15 years of age" in subdivisions (a) and (b) of section 707].) Thus, Proposition 57 was not oblivious to its effect of preserving the prior practice, but rather went out of its way to ensure those juveniles could still be prosecuted as adults in some circumstances. Senate Bill 1391 is in direct conflict with that intent.

Because Senate Bill 1391 clearly does not "further" (Prop. 57, § 2) the enumerated and inferable intents of Proposition 57, it is unconstitutional under article II, section 10(c) of the California Constitution.

I respectfully dissent.


_____
POOCHIGIAN, Acting P. J.

5.