Filed 4/30/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SOLANO COUNTY,<br><br>    Respondent;<br><br>ALEXANDER C.,<br><br>    Real Party in Interest. | A156194<br><br>(Solano County<br>Super. Ct. No. J040265) |

Proposition 57, enacted by voters in 2016, eliminated a district attorney's ability to "direct file" charges in criminal court against minors who were 14 years of age or older at the time of their alleged crimes. Instead, Proposition 57 requires a district attorney to obtain juvenile court approval before prosecuting minors in criminal court. In 2018, the Legislature further restricted a district attorney's ability to treat minors as adults by enacting Senate Bill 1391, which prohibits the transfer of 14- and 15-year-old offenders to criminal court in almost all circumstances. The Solano County District Attorney argues the new law is invalid because it is inconsistent with and does not further the intent of Proposition 57. We disagree and will deny the District Attorney's petition for writ of mandate.

## I. BACKGROUND

We begin by summarizing two decades of change in the law relating to the prosecution of minors.

1

Historically, the laws of this state required a juvenile court to declare a minor unfit for the juvenile system before a district attorney could prosecute that minor in criminal court. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 305 (*Lara*).) This changed approximately 20 years ago through a series of amendments to the Welfare and Institutions Code, culminating in March 2000 with the passage of Proposition 21. (*Ibid.*) For specified murders and sex crimes, Proposition 21 required district attorneys to charge minors 14 years old or older directly in criminal court. (Former Welf. & Inst. Code, § 602, subd. (b), repealed by Initiative Measure (Prop 57, § 4.1, approved Nov. 8, 2016, eff. Nov. 9, 2016).) For other specified serious offenses, Proposition 21 provided district attorneys with discretion to charge minors 14 or older in criminal court instead of juvenile court. (Former Welf. & Inst. Code, § 707, subd. (d), repealed by Initiative Measure (Prop 57, § 4.2, approved Nov. 8, 2016, eff. Nov. 9, 2016).)

The changes implemented by Proposition 21 were rolled back in November 2016 with the passage of Proposition 57, the Public Safety and Rehabilitation Act of 2016. Proposition 57 implemented a series of criminal justice reforms designed to "focus[] resources on keeping dangerous criminals behind bars, while rehabilitating juvenile and adult inmates and saving tens of millions of taxpayer dollars." (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) argument in favor of Proposition 57, p. 58.) For juvenile offenders, Proposition 57 "largely returned California to the historical rule" by eliminating direct filing in criminal court. (*Lara*, *supra*, 4 Cal.5th at p. 305.) Under Proposition 57, " '[c]ertain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated.' " (*Id.* at pp. 305–306.) For minors 16 or older, district attorneys can seek transfer to criminal court for any felony offense. (Former Welf. & Inst. Code, § 707, subd. (a)(1).) For 14- and 15-year-olds, district attorneys could seek transfer to criminal court only for specified serious or violent offenses. (Welf. & Inst. Code, § 707, subds. (a)(1) and (b), repealed by Stats. 2018, ch. 1012 (SB 1391), § 1, eff. Jan. 1, 2019).)

In September 2018, the Governor approved Senate Bill No. 1391 (2017–2018 Reg. Sess.) (SB 1391) (Stats. 2018, ch. 1012, § 1), which went into effect January 1, 2019. SB 1391 eliminates the district attorneys' ability to seek transfer of 14- and 15-year-olds from juvenile court to criminal court, save for a narrow exception if the minor is "not apprehended prior to the end of juvenile court jurisdiction." (Welf. & Inst. Code, § 707, subd. (a)(2).) The Legislature declared that SB 1391 amended Proposition 57 and "is consistent with and furthers the intent of Proposition 57." (SB 1391, § 3.)

Having described the legal landscape for the prosecution of minors, we turn to the background of this case. In March 2011, when Proposition 21 controlled, the Solano County District Attorney charged defendant Alexander C. in criminal court with 15 felonies, including two counts of attempted murder, two counts of torture, and various sex offenses. Alexander was 14 at the time of the crimes. A jury convicted on all charges, and found true several enhancements. The trial court sentenced Alexander to an aggregate term of 61 years to life in prison, plus a consecutive life term.

Alexander appealed. His appeal was pending in November 2016 when voters approved Proposition 57. A short time later, we issued an opinion affirming his convictions on seven counts, but reversing the remaining eight after concluding Alexander received ineffective assistance of counsel. We also concluded that Alexander was entitled to a Proposition 57 transfer hearing in juvenile court, so the juvenile court could decide whether retrial on the reversed counts and disposition of the entire case should occur in juvenile court or in criminal court.

The People filed a petition for review with the Supreme Court, which was initially granted. Then in February 2018, the Supreme Court dismissed review and remanded the matter in light of *Lara*, in which the Court held that Proposition 57 applies retroactively to cases such as Alexander's where the judgment was not final when the initiative was enacted. (*Lara*, *supra*, 4 Cal.5th at p. 304.) We remanded to the superior court, where the criminal court suspended proceedings and referred the case to juvenile court for a transfer hearing.

While Alexander awaited his Proposition 57 transfer hearing, the Governor signed SB 1391. Alexander promptly moved to dismiss the district attorney's motion to transfer, arguing that because he was 14 at the time of the crimes, SB 1391 would preclude his case from proceeding in criminal court. The District Attorney opposed Alexander's motion, arguing SB 1391 is an invalid amendment to Proposition 57 because it is not consistent with Proposition 57 and does not further the proposition's intent. Rejecting these arguments and agreeing with Alexander, the juvenile court terminated the transfer proceeding.

The District Attorney then filed the instant petition for writ of mandate, asking us to strike down SB 1391 and to order the juvenile court to reconsider transferring Alexander to criminal court. The District Attorney argues, as it did in the trial court, that SB 1391 violates state constitutional protections for the initiative process because SB 1391 is inconsistent with Proposition 57 and does not further its intent. Alexander disagrees, and the Attorney General has also submitted a brief defending SB 1391, arguing that the statute is a valid amendment to Proposition 57.

## II. DISCUSSION

The Legislature may not, without a vote of the people, amend an initiative statute "unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const., art. II, § 10, subd. (c).) Proposition 57 expressly permits amendment by a majority vote of the Legislature, but only "so long as such amendments are consistent with and further the intent" of the proposition. (Ballot Pamp., *supra*, text of Prop. 57, § 5, p. 145.)

In *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, our Supreme Court analyzed a similar initiative provision—one that permitted legislative amendments only " 'to further [the initiative's] purposes.' " (*Id.* at p. 1251.) The Court explained that "[s]uch a limitation upon the power of the Legislature must be strictly construed, but it also must be given the effect the voters intended it to have." (*Id.* at pp. 1255–1256.)

4

Balancing these concerns and "starting with the presumption that the Legislature acted within its authority," the Court articulated the standard that governs our assessment of SB 1391: "we shall uphold the validity of [the legislative amendment] if, by any reasonable construction, it can be said that the statute furthers the purposes" or intent of Proposition 57. (*Id.* at p. 1256.)

**A. Express Purpose and Intent of Proposition 57**

The parties and the Attorney General agree that the starting point for identifying the intent of the voters in adopting Proposition 57 is the initiative's statement of "purpose and intent." Under this heading, Proposition 57 states: "[i]n enacting this act, it is the purpose and intent of the people of the State of California to: [¶]1. Protect and enhance public safety. [¶]2. Save money by reducing wasteful spending on prisons. [¶]3. Prevent federal courts from indiscriminately releasing prisoners. [¶]4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles. [¶]5. Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (Ballot Pamp., *supra*, text of Prop. 57, § 2, p. 141.) Using these statements of intent as our guideposts we must determine whether, under any reasonable construction, SB 1391 is consistent with and furthers the intent of Proposition 57.

We begin with the first of two statements of intent expressly related to juvenile offenders—to "[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles." Proposition 57 sought to promote juvenile rehabilitation by channeling more minors into the juvenile system, where they are "generally treated quite differently [than inmates in the prison system], with rehabilitation as the goal." (*Lara, supra*, 4 Cal.5th at p. 306.) To increase the number of minors in the juvenile system, Proposition 57 eliminated Proposition 21's system of direct filing in criminal court, meaning minors "would no longer automatically be tried in adult court and no youth could be tried in adult court based only on the decision of a prosecutor." (Ballot Pamp., *supra*, analysis by the legislative analyst, p. 56.)

5

SB 1391 takes Proposition 57's goal of promoting juvenile rehabilitation one step further by ensuring that almost all who commit crimes at the age of 14 or 15 will be processed through the juvenile system.  As the Assembly Committee on Public Safety concluded:  "Keeping 14 and 15 year olds in the juvenile justice system will help to ensure that youth receive treatment, counseling, and education they need to develop into healthy, law abiding adults."  (Assem. Com. on Public Safety, Rep. on SB 1391 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 4.)  It is apparent that SB 1391 is consistent with and furthers Proposition 57's goal of emphasizing rehabilitation for juvenile offenders.

We reach a similar conclusion with regard to Proposition 57's second statement of intent directed at minors—to "[r]equire a judge, not a prosecutor, to decide whether juveniles should be tried in adult court."  (Ballot Pamp., *supra*, text of Prop. 57, § 2, p. 141.)  SB 1391 maintains this requirement; no minor may be prosecuted in criminal court unless a juvenile court first determines that the minor is unfit for the juvenile system.  SB 1391 certainly narrows the class of minors who are subject to review by a juvenile court for potential transfer to criminal court—eliminating most 14- and 15-year-olds from consideration—but it in no way detracts from Proposition 57's stated intent that, where a transfer decision must be made, a judge rather than a prosecutor must make the decision.

Proposition 57's remaining expressions of intent, while not directed solely toward the prosecution of minors, may all be seen as furthered by SB 1391.  The first of these is Proposition 57's goal to "[p]rotect and enhance public safety."  (Ballot Pamp., *supra*, text of Prop. 57, § 2, p. 141.)  The proponents of Proposition 57 indicated that increasing the number of minors in the juvenile system protects and enhances public safety, since "minors who remain under juvenile court supervision are less likely to commit new crimes."  (Ballot Pamp., *supra*, argument in favor of Prop. 57, p. 58.)  It follows that the Legislature could reasonably conclude SB 1391 protects and enhances public safety

6

because SB 1391 expands the category of minors who will remain in the juvenile system. (Accord Assem. Com. on Public Safety, Rep. on SB 1391 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 4 ["When youth are given age-appropriate services and education that are available in the juvenile justice system, they are less likely to recidivate"].)

The District Attorney expresses concern that offenders such as Alexander will not have sufficient time to rehabilitate in the juvenile system before the expiration of the juvenile court's jurisdiction. For offenders who would have faced an aggregate sentence of seven years or more had they been tried in criminal court, juvenile court jurisdiction normally ends "upon the expiration of a two-year period of control, or when the person attains 25 years of age, whichever occurs later." (Welf. & Inst. Code, § 1769, subd. (d)(2).) The District Attorney's concerns, while understandable, are mitigated by her ability to petition a court to extend the duration of juvenile court jurisdiction if discharging a juvenile offender "would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality that causes the person to have serious difficulty controlling his or her dangerous behavior." (Welf. & Inst. Code, § 1800, subd. (a).) Indeed, in signing SB 1391, the Governor "considered the fact that young people adjudicated in juvenile court can be held beyond their original sentence" under section 1800. (Governor's message to Sen. on SB 1391 (Sept. 30, 2018) Sen. J. (2017–2018 Reg. Sess.) p. 6230.)

SB 1391 is also aligned with Proposition 57's remaining two express purposes: to "[s]ave money by reducing wasteful spending on prisons" and "[p]revent federal courts from indiscriminately releasing prisoners." (Ballot Pamp., *supra*, text of Prop. 57, § 2, p. 141.) Proposition 57 was passed with the goal of "reduc[ing] state prison and parole costs as . . . youths would no longer spend any time in prison or be supervised by state parole agents following their release." (Ballot Pamp., *supra*, analysis by the legislative analyst, p. 57.) It was also designed to facilitate the state's compliance with a federal

7

court order to "reduce the prisoner population to 137.5% of the adult institutions' total design capacity," so that federal courts would not order prisoners released to address overcrowding. (See *Coleman v. Schwarzenegger* (E.D. Cal. and N.D. Cal. 2009) 922 F.Supp.2d 882, 962.) Once again, SB 1391 promotes both of these goals by narrowing the class of minors who would be subject to a lengthy prison sentence in an adult institution.

In sum, SB 1391 is consistent with and furthers the expressed purposes of Proposition 57.

**B. Implied Purpose and Intent of Proposition 57**

The District Attorney argues that the purpose and intent of Proposition 57 are not limited to the goals expressly enumerated in the initiative, but "can also be found in the actual changes that it brought." The District Attorney correctly points out that Proposition 57 "continue[d] the practice of permitting prosecution of 14-15 year-olds" in criminal court for serious or violent offenses, and she argues from this fact that it is the purpose and intent of Proposition 57 to continue allowing such prosecutions. While it may be appropriate to look beyond an initiative's express statement to discern purpose and intent (*Amwest*, *supra*, 11 Cal.4th at pp. 1256–1257), we disagree for three reasons with how the District Attorney has done so here.

First, the practice of allowing certain 14- and 15-year-olds to be prosecuted in criminal court is not an "actual change[]" wrought by Proposition 57, but a continuation of prior practice. More than 20 years before Proposition 57, the Legislature lowered the age at which a minor could be prosecuted in criminal court in California, from 16 to 14 years old. (Assem. Bill No. 560 (1993–1994 Reg. Sess.) as amended Aug. 26, 1994.) There the minimum age remained, for minors accused of serious or violent crimes, until SB 1391.[1] As originally drafted, Proposition 57 would have returned the minimum age at

_____

[1] Because we conclude SB 1391 is consistent with and furthers the intent of Proposition 57, we need not address Alexander's alternative argument that SB 1391 did

8

which a minor could be transferred to criminal court to 16 years old, but after a period of public comment and before the initiative went to the voters, its proponents revised the measure to its final form, allowing the prosecution of certain 14- or 15-year-olds in criminal court to continue. (See *Brown v. Superior Court* (2016) 63 Cal.4th 335, 340–341 (*Brown*).) This history means that *even if* the intent of the voters in adopting an initiative should be understood to include any "actual changes" the initiative makes to preexisting law, then permitting prosecution of certain 14- and 15-year-olds in criminal court would *not* be the purpose or intent of Proposition 57. Proposition 57 effected change to the procedure for prosecuting minors in criminal court, but it did not expand—and was not intended to solidify—the class of juvenile offenders subject to that procedure.

Second, the District Attorney's argument presumes, incorrectly, that amendments to the *provisions* of Proposition 57 necessarily change the *intent* of Proposition 57. Any amendment changes an initiative's " ' "scope or effect . . . , whether by addition, omission, or substitution of provisions." ' " (*Brown*, *supra*, 63 Cal.4th at p. 354.) But if any amendment to the provisions of an initiative is considered inconsistent with an initiative's intent or purpose, then an initiative such as Proposition 57 could never be amended. There would be no purpose to having included, as Proposition 57 does, language expressly allowing legislative amendments that "are consistent with and further the intent" of the proposition. (Ballot Pamp., *supra*, text of Prop. 57, § 5, p. 145.) The District Attorney's mistake here is to have defined the intent of the electorate in adopting Proposition 57 at a level so granular as to equate that intent with each of the specific provisions in the initiative. The *Amwest* case illustrates a sounder approach.

*Amwest* illustrates how courts should construe initiative language allowing amendments that further an initiative's purpose. Courts may properly look to the

not amend Proposition 57 but this older statute, Assembly Bill No. 560 (1993–1994 Reg. Sess., Stats. 1994, ch. 453, § 9.5.)

9

initiative " 'as a whole' " to discern that purpose *Amwest* teaches. (*Amwest*, *supra*, 11 Cal.4th at p. 1257.) In undertaking such an analysis with regard to an insurance reform initiative, *Amwest* articulates the 'two major purposes of Proposition 103" at a high level. (*Id*. at p. 1259.) They are "to reduce, by at least 20 percent, the rates for all insurance regulated under chapter 9 [of part 2, division 1, of the Insurance Code (§ 1861.01 et seq.)] and to replace the former system for regulating insurance rates . . . with a system in which the commissioner must approve such rates prior to their use." (*Ibid*.) Because the statute challenged in *Amwest* contravenes these purposes broadly stated, it is invalid. (*Id*. at p. 1265.)

The purpose and intent of Proposition 57 can and should be articulated at a similarly high level. In fact, the Supreme Court has already described Proposition 57's purpose and intent at an appropriate high level: the initiative "addresses the process for transferring minors to adult court for criminal prosecution, and expands parole suitability review for state prisoners." (*Brown*, *supra*, 63 Cal.4th at p. 354.) Clearly, there is nothing inconsistent with these purposes in SB 1391.

Third, we disagree with the District Attorney that the drafting history of Proposition 57 undermines our analysis. The District Attorney argues that the changes the proponents made to Proposition 57 in response to public comments before the election show that "the proponents of Proposition 57 intentionally omitted language that would have the same effect as SB-1391." This is true. The District Attorney is also correct that the fact the proponents made this change "is most persuasive to the conclusion that the [initiative] should not be construed to include the omitted provision." (*People v. Soto* (2011) 51 Cal.4th 229, 245.) But in arguing that this history somehow undermines the constitutionality of SB 1391, the District Attorney missteps. As the trial court explains, the District Attorney "confuses statutory construction of a specific provision of law with determination of the purpose and intent of legislation." Proposition 57's drafting history confirms what is in any event clear from the initiative's text, namely

10

that Proposition 57 cannot itself be construed to prevent district attorneys from seeking transfer to criminal court of 14- and 15-year-olds accused of serious or violent crimes. But nobody has argued that Proposition 57 prevents Alexander's case from being transferred to criminal court. It is SB 1391 that accomplishes this result. And nothing about the intent of Proposition 57, as it can be inferred from examining the initiative as a whole, is inconsistent with this result.

**C. Proposition 21**

Finally, we reject the District Attorney's additional argument that SB 1391 should be struck down because it conflicts with Proposition 21, the 2000 initiative that permitted direct-filing in criminal court. The provisions of Proposition 21 relating to the prosecution of 14- and 15-year-olds were repealed by Proposition 57, which eliminated Proposition 21's direct-filing procedure. (See *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 710–711 ["voters apparently rethought their votes on Proposition 21 and passed Proposition 57 at the November 8, 2016, General Election"]; *People v. Cervantes* (2017) 9 Cal.App.5th 569, 596, disapproved of on other grounds in *Lara*, *supra*, 4 Cal.5th 299 ["Proposition 57 was designed to undo Proposition 21"].) The critical question, which we have addressed in this opinion, is whether SB 1391 conflicts with or undermines Proposition 57. It does not.

## III. DISPOSITION

The petition for writ of mandate is denied. The stay issued by this court on January 16, 2019 shall expire as soon as this decision is final.

11

                                                    _____

                                                    TUCHER, J.


WE CONCUR:


_____

POLLAK, P. J.


_____

STREETER, J.

| | |
|---|---|
| Trial Court: | Solano County Superior Court |
| Trial Judge: | Hon. Robert C. Fracchia |
| Counsel for Petitioner: | Krishna A. Abrams, District Attorney; Karen Jensen, Deputy District Attorney; Michael D. Schwartz, Deputy District Attorney |
| Counsel for Respondent: | Xavier Becerra, Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General |
| Counsel for Real Party in Interest: | Peter Obstler |