Filed 8/26/20  P. v. Crawford CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEANTE DARNELL CRAWFORD,<br><br>    Defendant and Appellant. | C090245<br><br>(Super. Ct. Nos.<br>STK-CR-FE-2011-0007094 &<br>SF118538A) |

In 2013, defendant Deante Darnell Crawford was convicted and sentenced in adult criminal court to 21 years in state prison for an offense that he committed when he was 14 years old.  Several years later, the Legislature enacted Senate Bill No. 1391 (2017-2018 Reg. Sess.) (Senate Bill 1391), which eliminated, in almost all circumstances, the statutory authority to transfer to adult criminal court a minor who was 14 or 15 years old at the time of the offense.  (Stats. 2018, ch. 1012.)  In 2019, following the enactment of Senate Bill 1391, defendant filed a motion requesting that the court reverse his conviction and remand his case to juvenile court for disposition under the juvenile court laws.  The People opposed the motion, arguing that Senate Bill 1391 does not apply to defendant

1

because his conviction already was final when Senate Bill 1391 became effective. The trial court denied the motion.

On appeal, defendant argues that the trial court erred in denying his motion because (1) the Legislature intended Senate Bill 1391 to apply retroactively to final convictions, and (2) principles of equal protection require that Senate Bill 1391 apply retroactively to final convictions. We affirm.

LEGAL BACKGROUND

The decision whether to try a minor in juvenile court or adult criminal court has "potentially major consequences." (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 306 (*Lara*).) While persons convicted of serious crimes in adult court can be punished with long prison sentences, juveniles tried in juvenile court generally receive more lenient treatment, with shorter periods of confinement and a focus on rehabilitation. (*Id*. at pp. 303, 306; see also *K.C. v. Superior Court* (2018) 24 Cal.App.5th 1001, 1011.)

Historically, only those minors at least 16 years of age at the time of the offense could be tried in criminal court, and then, only after a judicial determination that the minor was unfit to be dealt with under juvenile court law. (*People v. Superior Court (K.L.)* (2019) 36 Cal.App.5th 529, 536-537 (*K.L.*).) The minimum transfer age remained at 16 for over three decades, until 1994, when the Legislature lowered it to 14 for certain enumerated serious or violent felonies. (*B.M. v. Superior Court* (2019) 40 Cal.App.5th 742, 750-751, review granted Jan. 2, 2020, S259030.) Under the 1994 legislation, a minor as young as 14 years of age could be prosecuted in criminal court after a judicial determination of unfitness for juvenile adjudication. (*K.L., supra*, at p. 537.)

In 2000, California voters passed Proposition 21, the Gang Violence and Juvenile Crime Prevention Act, which broadened the circumstances in which minors 14 years of age and older could be prosecuted in criminal court. (*K.L., supra*, 36 Cal.App.5th at p. 537; *In re B.M., supra*, 40 Cal.App.5th at p. 751, review granted Jan. 2, 2020, S259030.) Proposition 21 permitted, and in some cases required, prosecutors to charge minors aged

2

14 or 15 directly in criminal court, without a judicial determination of unfitness. (*People v. Superior Court (Alexander C.)* (2019) 34 Cal.App.5th 994, 997 (*Alexander C.*); see also *Lara, supra*, 4 Cal.5th at p. 305.)

In 2016, voters undid some of the changes made by Proposition 21 through the enactment of Proposition 57, the Public Safety and Rehabilitation Act of 2016. (*Alexander C., supra*, 34 Cal.App.5th at p. 997.) With respect to juveniles, Proposition 57 " 'largely returned California to the historical rule' " by eliminating prosecutors' ability to file charges against juveniles directly in criminal court and limiting the circumstances under which a minor could be transferred to criminal court by a judge. (*Id*. at p. 998.) After Proposition 57, minors aged 14 or 15 still could be tried in criminal court for specified serious or violent offenses, but only after a juvenile court judge conducted a transfer hearing and decided the minor was unfit for juvenile court. (*Lara, supra*, 4 Cal.5th at pp. 305, 308.)

Under California law, a voter initiative such as Proposition 57 is afforded special protection that limits the Legislature's ability to modify it. (*People v. Cruz* (2020) 46 Cal.App.5th 740, 748.) "Such a statute 'may be changed only with the approval of the electorate unless the initiative measure itself permits amendment or repeal without voter approval.' [Citation.]" (*Ibid*.) Proposition 57 permits amendments without voter approval, provided that the changes are consistent with and further the intent of the act. (*K.L., supra*, 36 Cal.App.5th at p. 535.)

In 2018, the Legislature enacted Senate Bill 1391 (Stats. 2018, ch. 1012, § 1), which amended Proposition 57 by eliminating the authority of prosecutors to seek transfer to criminal court of a minor who was 14 or 15 years old at the time of the offense, "save for a narrow exception if the minor is 'not apprehended prior to the end of juvenile court jurisdiction.' (Welf. & Inst. Code, § 707, subd. (a)(2).)" (*Alexander C., supra*, 34 Cal.App.5th at p. 998.) Senate Bill 1391 declared that its provisions are consistent with and further the intent of Proposition 57. (Stats. 2018, ch. 1012, § 3;

*Alexander C., supra*, 34 Cal.App.5th at p. 998.) In *K.L., supra*, 36 Cal.App.5th 529, we held that Senate Bill 1391 was a valid legislative amendment consistent with and furthering the intent of Proposition 57. (*K.L.* at pp. 532-533.)

## FACTUAL AND PROCEDURAL BACKGROUND

We limit our recitation of the facts to those necessary to provide a general background and determination of the issues defendant raises on appeal.

In September 2011, defendant, who was 14 years old at the time, shot a homeless man twice in the back, without warning, and then took his bicycle. The victim died shortly thereafter. After the shooting, defendant confessed to an informant that he shot the victim because he wanted to prove "he had the guts to do it."[1]

An information filed directly in adult criminal court charged defendant with willful, deliberate, and premeditated murder (Pen. Code, § 187, subd. (a); count 1),[2] grand theft of personal property (§ 487, subd. (a); count 2), and receipt of known stolen property (§ 496, subd. (a); count 3). It further alleged that at the time of the offense in count 1, defendant was a minor 14 years of age or older within the meaning of Welfare and Institutions Code section 707, former subdivision (d)(2)(A) & (B). Defendant also was charged with enhancements for intentional and personal discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)) and personal use of a firearm (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)).

In April 2013, defendant entered into a negotiated plea agreement. As to count 1, the parties agreed to reduce the charge from murder to voluntary manslaughter (§ 192,

---

[1] The parties stipulated to the preliminary hearing transcript as the factual basis for defendant's plea. However, because the preliminary hearing transcript is not included in the record on appeal, and because the underlying facts are not contested on appeal, our summary of the underlying facts is based on the probation report.

[2] Undesignated statutory references are to the Penal Code.

4

subd. (a)), and defendant agreed to plead guilty to the reduced charge.  Defendant agreed to admit the section 12022.5, subdivision (a) firearm enhancement and stipulated that he fell within the provisions of Welfare and Institutions Code section 707, former subdivision (d)(2)(A).  In exchange for his plea, the People dismissed counts 2 and 3, as well as the other allegations.

In June 2013, the trial court sentenced defendant to 21 years in state prison, comprised of the upper term of 11 years on count 1, plus 10 years for the firearm enhancement.

In June 2019, defendant filed a motion in the trial court to remand his case to the juvenile court under Welfare and Institutions Code section 707, as amended by Senate Bill 1391.  The People opposed the motion.  After a hearing, the court denied the motion. On August 21, 2019, defendant filed a timely notice of appeal of the trial court's order.

## DISCUSSION

As discussed above, Senate Bill 1391 virtually eliminated the ability to transfer to adult criminal court any minor who was 14 or 15 years old at the time of his or her offense.  (Welf. & Inst. Code, § 707, subd. (a).)  The parties agree, as do we, that Senate Bill 1391 applies retroactively to nonfinal convictions under the rule of *In re Estrada* (1965) 63 Cal.2d 740, 742-746 (*Estrada*).  (*People v. Superior Court (I.R.)* (2019) 38 Cal.App.5th 383, 386, review granted Nov. 26, 2019, S257773; *C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1038; see also *Lara, supra*, 4 Cal.5th at pp. 303-304.)  The question presented here is whether Senate Bill 1391 applies retroactively to final convictions as well.

Relying on *In re Chavez* (2004) 114 Cal.App.4th 989, defendant argues that the legislative history of Senate Bill 1391 shows the Legislature intended Senate Bill 1391 to apply retroactively to *all* convictions, nonfinal and final alike, in order to " 'fix [the] mistake' " it made by allowing 14- and 15-year-old children to be tried as adults.

5

Defendant also contends that principles of equal protection require that Senate Bill 1391 be extended to defendants whose convictions are not final.

The People respond that Senate Bill 1391 does not apply to convictions, like defendant's, that were final when Senate Bill 1391 took effect and, therefore, the court lacks jurisdiction to remand defendant's case to juvenile court. We agree with the People.

Whether a statute operates prospectively or retrospectively is a question of statutory construction that we review de novo. (*People v. Brown* (2012) 54 Cal.4th 314, 319 (*Brown*); *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) Where, as here, the statute is silent regarding retroactivity (Stats. 2018, ch. 1012), we "employ the ordinary presumptions and rules of statutory construction" to discern the legislative intent. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230.)

We begin with the general rule of statutory construction, embodied in section 3, that "[n]o part of [the Penal Code] is retroactive, unless expressly so declared." (§ 3.) Our Supreme Court has construed this language to mean that in the absence of an express declaration, a statute will not be applied retroactively unless it is " 'very clear' " from extrinsic sources that the Legislature must have intended a retroactive application. (*People v. Martinez* (2018) 4 Cal.5th 647, 655; *Brown, supra*, 54 Cal.4th at pp. 319, 324 [requiring express declaration or a clear and unavoidable implication].) We must not "infer retroactive intent from vague phrases and broad, general language in statutes." (*Brown*, at pp. 319-320.) " ' "[A] statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective." ' [Citations.]" (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 955.)

In *Estrada, supra*, 63 Cal.2d 740, the California Supreme Court recognized a limited exception to the presumption that statutes operate prospectively. Under *Estrada*, we presume, absent evidence to the contrary, that the Legislature intends amendments

that lessen the punishment for a crime to apply to defendants in all cases in which the judgment is not yet final as of the amendment's effective date. (*Id*. at pp. 744-748.) The *Estrada* rule rests on an inference that the Legislature intends an amendment reducing punishment under a criminal statute to apply as broadly as possible, " 'distinguishing only as necessary between sentences that are final and sentences that are not.' " (*Lara, supra*, 4 Cal.5th at p. 308.)

However, while acknowledging the continuing viability of the *Estrada* rule, our Supreme Court has emphasized its narrowness. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1196, overruled on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) "*Estrada* is . . . properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context . . . ." (*Brown, supra*, 54 Cal.4th at p. 324.)

*Estrada* is of no help to defendant because its holding expressly applies only to cases in which the judgment is not final. (*Estrada, supra*, 63 Cal.2d at p. 744 ["The key date is the date of final judgment"]; *People v. Smith* (2015) 234 Cal.App.4th 1460, 1465; *People v. Conley* (2016) 63 Cal.4th 646, 657-658; see also *People v. Buycks* (2018) 5 Cal.5th 857, 883.) It is undisputed that defendant's conviction had long been final when Senate Bill 1391 took effect. Thus, the general presumption against retroactivity, not the *Estrada* exception, applies to his case.

Defendant argues that there is no constitutional impediment to applying Senate Bill 1391 to final convictions if that is what the Legislature intended. We find it unnecessary to wade into the constitutional thicket of the Legislature's power to retroactively reopen or set aside an otherwise final judgment. (Compare *People v. King* (2002) 27 Cal.4th 29, 31, *People v. Lynch* (1999) 69 Cal.App.4th 313, 314-315, and *Bennett v. Procunier* (1968) 262 Cal.App.2d 799, 800-801 with *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 260-264, *In re Chavez, supra*, 114 Cal.App.4th at pp. 1000-1001, and *People v. Community Release Bd.* (1979) 96 Cal.App.3d 792, 800.) Even if we

assume that the finality of defendant's judgment could be overcome by a "very clear" indication of retroactive intent, we find no such indication here.

Defendant argues that the legislative history of Senate Bill 1391 shows the Legislature enacted the law to correct the "grave mistake" it made in allowing juveniles to be prosecuted as adults for crimes they committed at age 14 or 15. However, a statement of remedial purpose, by itself, does not support an inference that an amendment was intended to apply retroactively to final judgments. "Most statutory changes are . . . intended to improve a preexisting situation and to bring about a fairer state of affairs, and if such an objective were itself sufficient to demonstrate a clear legislative intent to apply a statute retroactively, almost all statutory provisions and initiative measures would apply retroactively rather than prospectively." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1213.)

Defendant also asks us to infer that Senate Bill 1391 was intended to apply to final convictions because the Legislature did not express any intention that it should not. But this turns the "strong presumption" against retroactive application on its head. (See *Brown, supra*, 54 Cal.4th at p. 324.) In the absence of an express provision, a statutory amendment is presumed to operate prospectively unless it is very clear that the Legislature intended otherwise. (*Evangelatos v. Superior Court, supra*, 44 Cal.3d at p. 1208.) We decline to infer a retroactive intent based on broad references to cognitive science and adolescent brain development. (See *Brown, supra*, 54 Cal.4th at pp. 319-320.) These statements may explain why the Legislature amended the law, but they say nothing about whether the Legislature intended the amendments to apply retroactively to final judgments.

Had the Legislature intended Senate Bill 1391 to apply as broadly as defendant suggests, that intent presumably would have been reflected in the legislation itself. Instead, the language of Senate Bill 1391 is quite narrow. It is not a blanket prohibition on transferring minors from juvenile to criminal court. (Welf. & Inst. Code, § 707, subd.

(a).) It merely eliminates the prosecution's authority to initiate a transfer hearing for a minor alleged to have committed an offense when he or she was 14 or 15 years of age and, even then, subject to an exception for cases in which the minor was not apprehended before the end of juvenile court jurisdiction. (Welf. & Inst. Code, § 707, subd. (a).) In this sense, Senate Bill 1391 is dissimilar from most other legislation that has been retroactively applied to final judgments. (See, e.g., *People v. Conley, supra*, 63 Cal.4th at p. 657; *People v. DeHoyos* (2018) 4 Cal.5th 594, 604; *Way v. Superior Court of San Diego County* (1977) 74 Cal.App.3d 165, 177-180.)

We draw additional support for our conclusion from cases construing the retroactivity of Proposition 57, the voter initiative amended by Senate Bill 1391. (Stats. 2018, ch. 1012.) In *Lara, supra*, 4 Cal.5th 299, the Supreme Court held that under *Estrada, supra*, 63 Cal.2d 740, Proposition 57 applies retroactively to all juveniles charged directly in criminal court whose judgment was not yet final. (*Lara*, at pp. 303-304.) Subsequently, in *People v. Barboza* (2018) 21 Cal.App.5th 1315, the Court of Appeal held that Proposition 57 does not to apply to convictions that already were final when the initiative became effective. (*Id.* at pp. 1318-1319.) Defendant offers no explanation why Senate Bill 1391 should be construed to have a greater retroactive impact than the initiative it sought to advance. (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [where a statute is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, the Legislature is presumed to have adopted that construction].) We therefore conclude that the Legislature did not intend Senate Bill 1391 to apply retroactively to final convictions.

We are equally unpersuaded by defendant's argument that equal protection principles require that Senate Bill 1391 be applied retroactively to final convictions.[3]

---

[3]  Although defendant did not raise the equal protection issue before the trial court, he argues, and we agree, that the issue is reviewable on appeal. (*People v. Vera* (1997)

9

Even if we assume that defendant is similarly situated to juveniles whose judgments became final after Senate Bill 1391's effective date, defendant has failed to establish that Senate Bill 1391 violates equal protection.

Defendant relies upon *People v. Olivas* (1976) 17 Cal.3d 236 and its progeny as requiring application of the strict scrutiny standard whenever there is a challenge to a classification that affects a criminal defendant's liberty interests. But our Supreme Court has refused to read *Olivas* so broadly, noting that *Olivas* does not subject all criminal classifications to strict scrutiny merely because penal statutes implicate personal liberty interests. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 837.)

In *People v. Floyd* (2003) 31 Cal.4th 179, our Supreme Court applied the rational basis test in concluding that equal protection did not require Proposition 36 to be applied retroactively to convictions not yet final. (*Id*. at pp. 188-191.) Proposition 36, which ameliorated the punishment for persons convicted of nonviolent drug possession offenses, included an express saving clause specifying that it shall be applied prospectively. (*Id.* at pp. 183-185.) The defendant argued that the act violated equal protection because it created two similarly situated groups of nonviolent drug offenders—those convicted before the effective date of the act and those convicted after—and treated them in an unequal manner. (*Id*. at p. 188.) The Supreme Court found no equal protection violation, holding that the ability to be sentenced under a law enacted after the date of the commission of a crime is not a constitutional right, but a benefit conferred by statute and, as such, it is not unconstitutional for the Legislature to confer such benefit only on a prospective basis. (*Id*. at pp. 188-190; accord, *People v. Smith, supra*, 234 Cal.App.4th at pp. 1466-1468; see also *People v. K.P.* (2018) 30 Cal.App.5th

15 Cal.4th 269, 275-277, disapproved on other grounds as stated in *People v. French* (2008) 43 Cal.4th 36, 47, fn. 3; *In re Sheena K.* (2007) 40 Cal.4th 875, 886-887 & fn. 7.)

331, 342-343; see *McGinnis* v. *Royster* (1973) 410 U.S. 263, 276-277 [35 L.Ed.2d 282, 292].)

In *People v. Alexander* (2020) 45 Cal.App.5th 341, the Court of Appeal followed *Floyd*, in rejecting a claim that equal protection required Senate Bill No. 1393 (2017-2018 Reg. Sess.), giving courts discretion to strike prior serious felony enhancements, to be applied retroactively to final convictions. (*Alexander, supra*, at pp. 343, 346-347.) The court held that because a criminal defendant has no vested interest in a specific term of imprisonment, " '[r]etroactive application of a punishment-mitigating statute is not a question of constitutional right but of legislative intent.' " (*Id*. at p. 346.) Applying the rational basis test, the court concluded there is a rational basis for treating final and nonfinal convictions differently because it furthers the state's legitimate interest in " 'assur[ing] that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.' " (*Id*. at pp. 346-347.) We agree and reach the same conclusion here.

Senate Bill 1391 does not apply to final judgments. Because defendant's judgment was final when he moved to remand his case to juvenile court, we conclude that the trial court properly concluded that it lacked jurisdiction to reverse his conviction and remand his case to juvenile court. Accordingly, we affirm the order denying his motion.[4]

---

[4]     The People argue that, because the trial court lacked jurisdiction to grant defendant the relief he sought, the trial court's order did not affect defendant's "substantial rights," and therefore was not appealable under section 1237, subdivision (b). We are not persuaded. As our Supreme Court explained in *Teal v. Superior Court* (2014) 60 Cal.4th 595, the test of appealability under section 1237, subdivision (b) "does not turn on whether that party's claim is meritorious, but instead on the nature of the claim and the court's ruling thereto." (*Id*. at pp. 600, 601.) Here, defendant claimed that he had a right to retroactively receive the benefit of Senate Bill 1391, even though his conviction was final. Because defendant's motion would, if meritorious, have affected his substantial rights, we conclude the trial court's denial of that motion was an appealable order within the meaning of section 1237, subdivision (b).

11

## DISPOSITION

The order denying defendant's motion to remand his case to juvenile court is affirmed.

                                            KRAUSE_____, J.

I concur:

_____HULL_____, Acting P. J.

DUARTE, J., Dissenting

I dissent from the majority's decision to affirm the trial court's order denying defendant relief rather than to dismiss defendant's appeal as arising from a non-appealable order.

Defendant was in the superior court on remand for a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261. At the *Franklin* hearing, the trial court also entertained defendant's "Motion to Remand under SB 1391" and ruled that "without any guidance, other than the [*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299] Court's ruling, I do not believe I'm in a position to grant the motion." The court then "den[ied] the request to return this to juvenile court."

The majority concludes that Senate Bill No. 1391 did not apply to defendant's indisputably final judgment; thus, the trial court lacked jurisdiction to grant defendant the requested relief. (Maj. opn. pp. 6, 11.) I agree. But it follows that the resulting order by the trial court denying defendant relief did not--*and could not*--affect defendant's substantial rights and was therefore not appealable. (Pen. Code, § 1237, subd. (b); see, e.g., *People v. Fuimaono* (2019) 32 Cal.App.5th 132, 135 [trial court lacked jurisdiction to grant defendant's sentencing request where conviction was final; denial of motion could not have affected defendant's substantial rights and was therefore not appealable]; *People v. Turrin* (2009) 176 Cal.App.4th 1200, 1208 [trial court order denying motion on the basis the trial court lacked jurisdiction did not affect defendant's substantial rights and is therefore not an appealable order].)

Because the trial court's order is not appealable, the appeal therefrom must be dismissed. (See, inter alia, *People v. Fuimaono*, *supra*, 32 Cal.App.5th at p. 135 [appeal from non-appealable postjudgment order must be dismissed]; *People v. Turrin*, *supra*, 176 Cal.App.4th at p. 1208 [appeal from trial court's postjudgment order denying relief on the basis of a lack of jurisdiction is not an appealable order and should be dismissed]; *People v. Chlad* (1992) 6 Cal.App.4th 1719, 1726 [dismissing appeal after ruling the trial court lacked jurisdiction to modify the restitution fines]; *People v. Alexander* (2020) 45

1

Cal.App.5th 341, 345, 347 [concluding after lengthy analysis that Senate Bill No. 1393 does not apply to final convictions and dismissing the appeal from the trial court's postjudgment order after concluding the trial court lacked jurisdiction].)

To the extent the majority cites *Teal v. Superior Court* (2014) 60 Cal.4th 595 to justify its disposition, that case is inapposite. (See maj. opn., p. 11, fn. 4.) As relevant to this discussion, *Teal* concerned whether the lower court's denial of a petition for resentencing (Pen. Code, § 1170.126), based on the petitioner's failure to satisfy one of the threshold eligibility requirements set forth in the statute itself, was an appealable order. The court in *Teal* concluded that under those specific circumstances, the trial court's order was a determination on the merits affecting substantial rights. Indeed, the *Teal* court expressly distinguished the circumstances there from those here when it recognized "the trial court's authority or discretion to determine the merits of petitioner's claim was not predicated on his eligibility to file a petition in the first instance." (*Teal,* at pp. 599-600.) The trial court's jurisdiction over the petition for resentencing was never at issue in *Teal*; in that case, the issue was the appellate court's jurisdiction. (See *id.*, at pp. 600-601.)

*Teal* did not address the circumstances here. Contrary to the majority's suggestion (maj. opn., p. 11, fn. 4), this is not a merits case, requiring us to decide whether defendant satisfied the statutory eligibility requirements for obtaining the relief he sought. Defendant's statutory eligibility for relief was never at issue; the trial court never reached the merits of his petition. Instead, because defendant was barred from seeking relief by his postconviction status, the trial court lacked jurisdiction to entertain the petition. Our conclusion is a purely procedural determination that defendant's undisputed postconviction posture was such that he *could not bring the motion* in the first instance. Because we have determined that defendant could not properly bring the motion, the trial court's resulting order denying the motion was made without jurisdiction, and therefore *could not* have affected defendant's substantial rights. Accordingly, this appeal is of a non-appealable order, and it must be dismissed at the conclusion of our analysis.

2

In my view, the majority does not properly dispose of this appeal.  Thus, I am compelled to dissent from the Disposition.

      DUARTE      , J.