Filed 9/27/23  P. v. Tholmer CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TYRIE ALLEN THOLMER,<br><br>    Defendant and Appellant. | C095767<br><br>(Super. Ct. No. 12F07076) |

In 2010, defendant Tyrie Allen Tholmer was convicted of assault with a firearm, a crime he committed at age 15.  In 2015, a jury found defendant guilty of first degree murder and the trial court imposed a second strike sentence under the Three Strikes law, with his 2010 conviction qualifying as his first strike.  In 2020, we remanded for a new juvenile transfer hearing and possible resentencing based on a change in the law.  The trial court resentenced defendant in 2022, and in doing so, declined to strike defendant's prior strike.

Defendant appeals, arguing the trial court was required to strike his 2010 strike conviction following the enactment of Senate Bill No. 1391 (2017-2018 Reg. Sess.) (Senate Bill 1391) (Stats. 2018, ch. 1012, § 1), which largely eliminated the statutory authority to transfer to adult criminal court a minor who was 14 or 15 years old at the time of his or her strike offense. Alternatively, defendant contends the trial court failed to make the finding required under the newly amended Penal Code section 1385, subdivision (c)[1] before striking the strike. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, a jury found defendant guilty of first degree murder and possession of a firearm by a felon after defendant, unprovoked, shot and killed a wheelchair-bound man with cerebral palsy. (*People v. Tholmer* (Oct. 25, 2019, C080979) [nonpub. opn.] (*Tholmer*).) The jury further found that defendant intentionally and personally discharged a firearm causing death, and that he committed the crime in association with a criminal street gang. The trial court found true that defendant had suffered a 2010 prior strike conviction for an assault with a firearm he committed at age 15. The trial court sentenced defendant to an aggregate term of 75 years to life in prison, plus a determinate term of 16 years in prison. Defendant's sentence was comprised of 25 years to life for murder, three years for possession of a firearm, both doubled because of the strike prior, plus 25 years to life for the firearm enhancement and 10 years for the gang enhancement.

In 2019, we conditionally reversed defendant's convictions in accordance with Proposition 57 (the Public Safety and Rehabilitation Act of 2016 (Proposition 57)), ordered that the 10-year sentence for the gang enhancement be stricken, and transferred the matter back to juvenile court for a transfer hearing. (Welf. & Inst. Code, § 707.) On September 1, 2021, the matter was returned to the jurisdiction of the criminal court.

---

[1] Undesignated section references are to the Penal Code.

At a February 9, 2022 resentencing hearing in the trial court, defendant moved to strike his firearm enhancement, and also moved to strike his prior strike. As to the latter, he argued that the prior strike should be stricken as an impermissible enhancement under the then-newly amended section 1385, subdivision (c). The trial court disagreed, finding that the Three Strikes law was an alternative sentencing scheme, not an enhancement, and thus not subject to section 1385, subdivision (c). The court further stated that even if it could consider striking the strike, it would not do so because "the minor at the time of the offense, now the [defendant here], used a firearm, and he was previously on parole/probation for the possession of a firearm." The trial court then stayed the 25-year-to-life term for the firearm enhancement in light of defendant's already lengthy prison term, and because defendant was under the age of 18 at the time of his offense. It therefore reduced defendant's term to 50 years to life in prison, plus six years.

After the trial court pronounced defendant's sentence, defense counsel stated he wanted to "put something on the record." He argued that under Welfare and Institutions Code section 707, as amended by Senate Bill 1391, defendant's 2010 conviction no longer qualified as a strike. This is because, he explained, defendant was 15 at the time of the offense, and a 15 year old can no longer be tried in criminal court following Senate Bill 1391. Thus, he asserted that under the current state of the law, defendant's prior strike would no longer be viable. The trial court noted it had already issued its ruling, yet defendant now sought to raise an entirely new argument as to why it should strike the strike. Defense counsel clarified that he was not making this argument, because the trial court had stated that it would not choose to exercise its discretion to strike the strike under *Romero*,[2] so that "takes care of the issue." Rather, he said he was "simply making

_____

[2]   *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

a record" that defendant was age 15 at the time of the strike, and "the Appellate Court can do with it what it will."

## DISCUSSION

Defendant contends that the trial court erred by qualifying his 2010 conviction as a prior strike in light of Senate Bill 1391, which eliminated prosecutorial authority to transfer minors to criminal court who were 14 or 15 years old at the time of their offense. He concedes that defendant's 2010 judgment is final, but argues that Senate Bill 1391, as an ameliorative statute, still operates to prevent that conviction from being used as a strike in his current, nonfinal case, and that the Legislature intended this result. Defendant further asserts that equal protection principles prohibit us from subjecting defendants with qualifying pre-Senate Bill 1391 felony convictions to Three Strikes sentencing, while exempting those who cannot now be charged as adults under Senate Bill 1391. We disagree with these contentions.

## I

### *Forfeiture*

We initially address the issue of forfeiture. Defendant concedes that he did not seek to strike his strike pursuant to Senate Bill 1391 in the trial court, but argues his appeal is regardless cognizable because he seeks to correct an unauthorized sentence. The People agree, as do we, that defendant's challenge to his unauthorized sentence is not forfeited and may be raised on appeal.

"As a general rule, a criminal defendant who fails to object at trial to a purportedly erroneous ruling forfeits the right to challenge that ruling on appeal. [Citation.]" (*People v. Anderson* (2020) 9 Cal.5th 946, 961.) However, an exception arises where a sentence is unauthorized, and applies "when the trial court has imposed a sentence that 'could not lawfully be imposed under any circumstance in the particular case.' " (*Id.* at p. 962.) As

4

defendant contests the trial court's legal authority to impose his sentence using his 2010 conviction as a strike, we may properly consider the merits of his appeal.[3]

II

*Senate Bill 1391*

A.   *Legal background*

California's laws regarding whether a minor may be tried in adult criminal court have evolved over time.  Historically, only those minors at least 16 years of age at the time of their offense could be tried in criminal court, and then only after a judicial determination that the minor was unfit to be dealt with under the juvenile court law. (*People v. Superior Court* (*K.L.*) (2019) 36 Cal.App.5th 529, 536-537.)  In 1994, however, the Legislature lowered the age at which minors could be tried in criminal court from age 16 to age 14 for certain enumerated serious or violent felonies.  (*B.M. v. Superior Court* (2019) 40 Cal.App.5th 742, 751.)  Then, in 2000, California voters approved Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998 (Proposition 21), which broadened the circumstances under which minors 14 years of age and older could be prosecuted in criminal court.  (*K.L., supra*, 36 Cal.App.5th at p. 537; *B.M., supra*, 40 Cal.App.5th at p. 751.)  Proposition 21 permitted, and in some cases required, prosecutors to charge minors aged 14 or 15 directly in criminal court, without a judicial determination of unfitness.  (*People v. Superior Court* (*Alexander C.*) (2019) 34 Cal.App.5th 994, 997 (*Alexander C.*); see also *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 305 (*Lara*).)

---

**3**    We note that in *Tholmer* we ordered that the trial court on remand shall (in relevant part) "exercise its discretion to strike the 25-year-to-life sentence enhancement pursuant to section 12022.53, subdivision (d)" (*Tholmer, supra*, C080979), and did not explicitly order a full resentencing.  However, defendant now argues that the imposition of the strike was unauthorized, which courts have jurisdiction to correct at any time. (*People v. Picklesimer* (2010) 48 Cal.4th 330, 338.)

5

The pendulum began to swing in the opposite direction in 2016, when voters reversed some of the changes made by Proposition 21 through the enactment of Proposition 57. (*Alexander C., supra*, 34 Cal.App.5th at p. 997.) After Proposition 57, minors aged 14 or 15 still could be tried in criminal court for specified serious or violent offenses, but only after a juvenile court judge conducted a transfer hearing and decided the minor was unfit for juvenile court. (*Lara, supra*, 4 Cal.5th at pp. 305, 308.)

Then, in 2018, the Legislature enacted Senate Bill 1391, which amended Proposition 57 by eliminating the authority of prosecutors to seek the transfer to criminal court of a minor who was 14 or 15 years old at the time of the offense, "save for a narrow exception if the minor is 'not apprehended prior to the end of juvenile court jurisdiction.' (Welf. & Inst. Code, § 707, subd. (a)(2).)" (*Alexander C., supra*, 34 Cal.App.5th at p. 998.) Senate Bill 1391 declared that its provisions were " 'consistent with and further[ed] the intent of Proposition 57.' " (Stats. 2018, ch. 1012, § 3; *Alexander C.*, at p. 998.)

B.     *The Three Strikes law*

The Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) is a sentencing scheme that applies automatically where a defendant has at least one prior qualifying serious or violent felony conviction and the trial court does not strike it. (*People v. Garcia* (2001) 25 Cal.4th 744, 757.) Where, as here, the trial court does not strike the defendant's prior strike, the trial court must double the term for the defendant's present conviction. (*Ibid.*; § 667, subd. (e)(1).)

As noted above, after 1994, minors as young as 14 and 15 could be convicted of a felony and therefore earn a strike conviction. (Welf. & Inst. Code, § 707, former subd. (d), as amended by Stats. 1994, ch. 448, § 3 (Assem. Bill No. 1948) & ch. 453, § 9.5 (Assem. Bill No. 560).) As defendant was convicted of his first qualifying felony in 2010, which he committed at age 15, his conviction qualified as a strike at sentencing. With the 2018 passage of Senate Bill 1391, however, a minor now must be 16 or older to

6

be convicted of a felony, and thus must be at least 16 years old to suffer a qualifying strike conviction.  (Stats. 2018, ch. 1012, § 1.)

      C.     *Analysis*

      1.     *Application of Senate Bill 1391 to final convictions*

As discussed, Senate Bill 1391 virtually eliminated the ability to transfer to adult criminal court any minor who was under 16 years old at the time of his or her offense. (Welf. & Inst. Code, § 707, subd. (a).)  The parties agree, as do we, that Senate Bill 1391 applies retroactively to nonfinal convictions under the rule of *In re Estrada* (1965) 63 Cal.2d 740, 742-746 (*Estrada*).  (*People v. Superior Court* (*I.R.*) (2019) 38 Cal.App.5th 383, 386, 392-393; see also *Lara, supra*, 4 Cal.5th at pp. 303-304.)

The parties agree that defendant's 2015 conviction is not final.  But defendant seeks to apply Senate Bill 1391 to nullify his 2010 conviction, which *is* final, for purposes of sentencing under the Three Strikes law.  Thus, the question presented here is whether the Legislature intended that Senate Bill 1391 apply retroactively to final convictions at sentencing.  We conclude that it did not.

Whether a statute operates prospectively or retrospectively is a question of statutory construction that we review de novo.  (*People v. Brown* (2012) 54 Cal.4th 314, 319 (*Brown*); *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) Where, as here, a statute is silent regarding retroactivity (Stats. 2018, ch. 1012), we "employ the ordinary presumptions and rules of statutory construction" to discern the legislative intent.  (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230.)

We begin with the general rule of statutory construction, embodied in section 3, that "[n]o part of [the Penal Code] is retroactive, unless expressly so declared."  (§ 3.) Our Supreme Court has construed this language to mean that in the absence of an express declaration, a statute will not be applied retroactively unless it is " 'very clear' " from extrinsic sources that the Legislature must have intended a retroactive application.

7

(*People v. Martinez* (2018) 4 Cal.5th 647, 655; *Brown, supra*, 54 Cal.4th at pp. 319-320, 324 [requiring express declaration or a clear and unavoidable implication].)  We must not "infer retroactive intent from vague phrases and broad, general language in statutes." (*Brown*, at p. 319.)  " ' "[A] statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective." ' " (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 955.)

In *Estrada, supra*, 63 Cal.2d 740, the California Supreme Court recognized a limited exception to the presumption that statutes operate prospectively.  Under *Estrada*, we presume, absent evidence to the contrary, that the Legislature intends statutory changes that lessen the punishment for a crime to apply to defendants in all cases in which the judgment is not yet final when the new law becomes effective.  (*Id*. at pp. 744-748.)  The *Estrada* rule rests on an inference that the Legislature intends an amendment reducing punishment under a criminal statute to apply as broadly as possible, " 'distinguishing only as necessary between sentences that are final and sentences that are not.' " (*Lara, supra*, 4 Cal.5th at p. 308.)

However, while acknowledging the continuing viability of the *Estrada* rule, our Supreme Court has emphasized its narrowness.  (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1196, overruled on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)  "*Estrada* is . . . properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context . . . ." (*Brown, supra*, 54 Cal.4th at p. 324.)

*Estrada* is of no help to defendant because its holding expressly applies only to cases in which the judgment is not final. (*Estrada, supra*, 63 Cal.2d at p. 744 ["The key date is the date of final judgment"]; *People v. Smith* (2015) 234 Cal.App.4th 1460, 1465; *People v. Conley* (2016) 63 Cal.4th 646, 657-658; see also *People v. Buycks* (2018) 5 Cal.5th 857, 883.)  It is undisputed that defendant's 2010 conviction had long been final

when Senate Bill 1391 took effect.  Thus, the general presumption against retroactivity, not the *Estrada* exception, applies here.

Defendant's reliance on *Lara, supra*, 4 Cal.5th 299 is similarly misplaced.  Indeed, we find additional support for our conclusion in *Lara* and other cases construing the retroactivity of Proposition 57, the voter initiative amended by Senate Bill 1391.  (Stats. 2018, ch. 1012.)  In *Lara, supra*, 4 Cal.5th 299, the Supreme Court held that under *Estrada, supra*, 63 Cal.2d 740, Proposition 57 applies retroactively to all juveniles charged directly in criminal court whose judgment was not yet final.  (*Lara*, at pp. 303-304.)  Subsequently, in *People v. Barboza* (2018) 21 Cal.App.5th 1315, the Court of Appeal held that Proposition 57 does not to apply to convictions that already were final when the initiative became effective.  (*Id*. at pp. 1318-1319.)  Defendant offers no plausible rationale for why Senate Bill 1391 should be construed to have a greater retroactive effect than the initiative whose purpose the bill sought to further.  (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [where a statute is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, the Legislature is presumed to have adopted that construction].)

Next, defendant argues that there is no constitutional impediment to applying Senate Bill 1391 to final convictions if that is what the Legislature intended.  We need not address this argument because we find no indication the Legislature intended Senate Bill 1391 to apply to final convictions.

Had the Legislature intended Senate Bill 1391 to apply as broadly as defendant suggests, that intent would presumably have been reflected in the legislation itself.  Instead, the bill language is quite narrow.  It is not a blanket prohibition on transferring minors from juvenile to criminal court.  (Welf. & Inst. Code, § 707, subd. (a).)  It merely eliminates prosecutors' authority to initiate a transfer hearing for a minor alleged to have committed an offense when he or she was 14 or 15 years old and, even then, subject to an exception for cases in which the minor was not apprehended before the end of juvenile

9

court jurisdiction.  (Welf. & Inst. Code, § 707, subd. (a).)  In this sense, Senate Bill 1391 is dissimilar from most other legislation that has been retroactively applied to final judgments.  (See, e.g., *People v. Conley, supra*, 63 Cal.4th at p. 657; *People v. DeHoyos* (2018) 4 Cal.5th 594, 604; *Way v. Superior Court of San Diego County* (1977) 74 Cal.App.3d 165, 177-180.)

Defendant also argues that the reasoning of *People v. Flores* (1979) 92 Cal.App.3d 461 precludes the use of his 2010 conviction as a strike in his current case.  We find *Flores* distinguishable.  There, the Court of Appeal concluded that the trial court erred in using the defendant's prior conviction for felony marijuana possession to enhance his sentence for his present conviction after the Legislature amended Health and Safety Code section 11357 to make possession of marijuana a misdemeanor.  (Stats. 1975, ch. 248, § 2, pp. 641-642.)  However, in conjunction with its changes to Health and Safety Code section 11357, the Legislature also enacted Health and Safety Code section 11361.5, subdivision (b), which authorized the superior court to order the destruction of arrest and conviction records for possession of marijuana.  (Stats. 1975, ch. 248, § 4, p. 643.)  (See *Flores, supra*, at p. 471.)  The following year, the Legislature added Health and Safety section 11361.7, which provided that any record or conviction subject to destruction " 'which became final more than two years previously, shall not be considered to be accurate, relevant, timely, or complete for any purposes by any agency or person [and that] [n]o public agency shall alter, amend, assess, condition, deny, limit, postpone, qualify, revoke, surcharge, or suspend any certificate, franchise, incident, interest, license, opportunity, permit, privilege, right, or title of any person because of an arrest or conviction for an offense specified in subdivision (a) or (b) of [Health and Safety Code] Section 11361.5 . . . on or after the date the records . . . are required to be destroyed . . . or two years from the date of such conviction . . . with respect to . . . convictions occurring prior to January 1, 1976 . . . .'  (Stats. 1976, ch. 952, § 2, pp. 2179-2180 . . . .)" (*Flores*, at pp. 471-472, italics omitted.)  Based on this language, the *Flores* court concluded that

10

the Legislature clearly "intended to prohibit the use of the specified records for the purpose of imposing any collateral sanctions." (*Id*. at p. 472.) In contrast, Welfare and Institutions Code section 707 contains no language suggesting—let alone mandating—that final convictions for felony offenses committed by 14 and 15 year olds are no longer valid or usable for any purpose.

Defendant further contends that interpreting the statute as he urges would be consistent with the Legislature's attempt to "undo the perceived damage inflicted by Proposition 21 and other 'tough on crime' initiatives," whereas a rejection of his analysis would "perpetuate the effects of a prior scheme the legislature has deemed racist, ineffective, and contrary to the public interest." (Italics omitted.) However, "[m]ost statutory changes are . . . intended to improve a preexisting situation and to bring about a fairer state of affairs, and if such an objective were itself sufficient to demonstrate a clear legislative intent to apply a statute retroactively, almost all statutory provisions and initiative measures would apply retroactively rather than prospectively." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1213.) Thus, legislative history may explain why the Legislature amended the law, but speaks not to whether the Legislature intended the amendments to apply retroactively to final judgments.

In sum, we discern no legislative intent to apply the changes made by Senate Bill 1391 to final judgments or to otherwise prohibit the use of his 2010 conviction as a strike in his current case.

### 2. *Equal protection*

We are equally unpersuaded by defendant's contention that equal protection principles require that Senate Bill 1391 be applied retroactively to final convictions. Even if we assume that defendant is similarly situated to juveniles whose judgments became final after Senate Bill 1391's effective date, defendant has failed to establish that Senate Bill 1391 violates equal protection.

11

Defendant relies upon *People v. Olivas* (1976) 17 Cal.3d 236 and its progeny as requiring application of the strict scrutiny standard whenever there is a challenge to a classification that affects a criminal defendant's liberty interests. But our Supreme Court has refused to read *Olivas* so broadly, noting that *Olivas* does not subject all criminal classifications to strict scrutiny merely because penal statutes implicate personal liberty interests. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 837.)

In *People v. Floyd* (2003) 31 Cal.4th 179, our Supreme Court applied the rational basis test in concluding that equal protection did not require Proposition 36 (the Substance Abuse and Crime Prevention Act of 2000 (Proposition 36)) to be applied retroactively to convictions not yet final. (*Id*. at pp. 188-191.) Proposition 36, which ameliorated the punishment for persons convicted of nonviolent drug possession offenses, included an express saving clause specifying that it shall be applied prospectively. (*Id*. at pp. 183-185.) The defendant argued that the act violated equal protection because it created two similarly situated groups of nonviolent drug offenders—those convicted before the effective date of the act and those convicted after—and treated them in an unequal manner. (*Id*. at p. 188.) The Supreme Court found no equal protection violation, holding that the ability to be sentenced under a law enacted after the date of the commission of a crime is not a constitutional right, but a benefit conferred by statute and, as such, it is not unconstitutional for the Legislature to confer such benefit only on a prospective basis. (*Id*. at pp. 188-190; accord, *People v. Smith, supra*, 234 Cal.App.4th at pp. 1466-1468; see also *People v. K.P.* (2018) 30 Cal.App.5th 331, 342-343; see *McGinnis v. Royster* (1973) 410 U.S. 263, 276-277 [35 L.Ed.2d 282, 292].)

In *People v. Alexander* (2020) 45 Cal.App.5th 341, the Court of Appeal followed *Floyd* in rejecting a claim that equal protection required Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1013, § 2), giving courts discretion to strike prior serious felony enhancements, to be applied retroactively to final convictions. (*Alexander, supra*,

12

at pp. 343, 346-347.)  The court held that because a criminal defendant has no vested interest in a specific term of imprisonment, " '[r]etroactive application of a punishment-mitigating statute is not a question of constitutional right but of legislative intent.' " (*Id.* at p. 346.)  Applying the rational basis test, the court concluded there is a rational basis for treating final and nonfinal convictions differently because it furthers the state's legitimate interest in " 'assur[ing] that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.' " (*Id.* at p. 347.)  We agree and reach the same conclusion here.

In sum, we conclude that Senate Bill 1391 does not apply to final judgments. Thus, the law does not operate to invalidate defendant's final 2010 conviction for sentencing purposes under the Three Strikes law.  The trial court therefore did not err in declining to strike defendant's strike in the wake of Senate Bill 1391.

In reaching this conclusion, we note that where a defendant is subject to being sentenced under the Three Strikes law, the defendant may argue that the trial court should exercise its discretion to strike his or her prior strike under *Romero*.  The trial court may then consider the defendant's youth at the time of his 2010 conviction, as well as the Legislature's movement away from criminalizing the behavior of minors.  So, although Senate Bill 1391 does not require the court to dismiss strikes based on final convictions from crimes committed at ages 14 and 15, trial courts are nonetheless free to strike those prior strikes in view of many of the same considerations and evolutions in law that defendant raises here.

## III

### *Senate Bill No. 81* (*2021-2022 Reg. Sess.*)

Defendant next contends that the trial court erred by denying his motion to strike his prior strike without first making the requisite findings under section 1385, subdivision (c), as amended by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) (Stats. 2021, ch. 721, § 1).  We again are not persuaded.

Effective January 1, 2022, Senate Bill 81 amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674; see Stats. 2021, ch. 721, § 1.) Specifically, section 1385, subdivision (c) now requires the trial court to dismiss an enhancement if it is in furtherance of justice and requires the court to consider and afford great weight to evidence offered by the defendant to prove any of the specified mitigating circumstances. (§ 1385, subd. (c)(1), (2).)

Central to defendant's argument is his contention that his strike constitutes an "enhancement" within the meaning of section 1385. However, we recently held that the Three Strikes law is not an enhancement under section 1385, subdivision (c), but rather "an alternative sentencing scheme for the current offense." (*People v. Burke* (2023) 89 Cal.App.5th 237, 243.) Thus, section 1385, subdivision (c) provides no basis for the trial court to weigh the evidence of defendant's mitigating circumstances to dismiss a prior strike. Accordingly, the trial court did not err by declining to apply section 1385, subdivision (c) to defendant's strike.

IV

*Abstract of Judgment*

Defendant asserts, and the People concede, that we must correct the abstract of judgment to properly reflect the sentence imposed by the trial court at resentencing. We agree with the parties.

"Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls. [Citations.]" (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) At defendant's February 9, 2022 resentencing, the trial court stayed the sentence of the firearm enhancement in the interest of justice. This reduced defendant's sentence to 50 years to life, plus a determinate term of six years. Nonetheless, the abstract of judgment appears

14

to state that defendant was sentenced to 75 years to life in prison, plus 16 years, which was his prior sentence.  We accordingly direct the trial court to correct the abstract of judgment.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment that accurately states defendant's sentence as 50 years to life, plus a determinate term of six years.  The trial court shall forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


                                                         /s/
                                                  Krause, J.


We concur:


   /s/
Robie, Acting P. J.


   /s/
Renner, J.


15